HORACE ANDERSON, as Substituted Trustee under the Last Will and Testament of RAMON MARTINEZ HERNANDEZ, Appellant, v. ISABELL M. BLOOD and FANNIE K. KOSS, Respondents, Impleaded with JOHN R. M. HERNZ and ALEXANDER MELHADO.

1. REAL PROPERTY — PURCHASER FOR VALUABLE CONSIDERATION — FRAUD. A purchaser of land for a valuable consideration is entitled to be protected in his title, and, in the absence of actual notice of fraud, it is necessary, in order to defeat his claim to be a *bona fide* purchaser, that the facts and circumstances, relied upon to charge him with knowledge of the fraud, should be of a character equivalent to notice.

2. IMPLIED KNOWLEDGE. If the facts within the knowledge of the purchaser are of such a nature as, in reason, to put him upon inquiry and to excite the suspicion of an ordinarily prudent person, and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry as suggested by the facts would have revealed.

3. DUTY OF PURCHASER AS TO MAKING INQUIRY. The question, in determining the *bona fides* of a purchaser for a valuable consideration of land alleged to have been sold in fraud of the rights of third parties, is not whether the purchaser could have discovered the existence of any fraud by an inquiry; but it is whether, acting as an ordinarily prudent person would have done, he was called upon, under the circumstances, to make inquiry.

*Anderson* v. *Blood*, 86 Hun, 244, affirmed.

(Argued March 4, 1897; decided March 23, 1897.)

APPEAL from an order of the General Term of the Supreme Court in the first judicial department, entered April 20, 1895, which reversed, upon questions of law and fact, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granted a new trial.

This action was brought to set aside certain conveyances of the property known as No. 11 East 29th street, in the city of New York, as having been fraudulently made. The defendant, John R. M. Hernz, as executor and trustee under the will of one Hernandez, on the 29th day of November, 1887, exposed the premises in question for sale, at public auction, and they were struck down to one Waddell at the price of $32,500.

The defendant Melhado was the real purchaser and Waddell had merely acted for him in the bidding. On the next day after this sale, they were advertised for private sale through one Sloan, a real estate agent. Blood, a brother-in-law of the defendant, Mrs. Isabell Blood, saw the advertisement and directed the latter's attention to its language; which offered a sale "at a bargain to a quick bidder." Negotiations were commenced with Sloan; which resulted in a contract, on January 6th, 1888, between the defendants Melhado and Blood for the sale of the premises to the latter for the sum of $40,000. Melhado had procured a loan of $30,000 to be made to him upon the property by one Moller, and it was a part of the contract of sale that Mrs. Blood should assume the mortgage and the expense of the examination of the title upon the loan; Mr. Wandell acting as Moller's lawyer in making that examination. According to the requirement of the contract of sale, Mrs. Blood, upon its execution, paid on account of the purchase money the sum of $3,250. Prior to the execution of the contract Mrs. Blood knew nothing about the title, nor about Hernz, the executor and trustee, or Melhado. Mrs. Blood employed Mr. Lobenthal as her attorney for the transaction; but the arrangement was that she might rely upon the examination of the title, when made by Mr. Wandell. Upon the date fixed for the closing of the purchase, on January 24th, 1888, the defendants Mrs. Blood, Melhado and Hernz, with Wandell, Lobenthal and Mrs. Blood's brother-in-law, met at the office of Mr. Wandell. The property had been sold subject to a lease made by Hernz, the trustee, to Melhado; which had nearly two years and a half to run, at a rental of $210 per month. Melhado agreed to cancel the lease upon the sale to Mrs. Blood, but desired to retain possession of the premises until May first. This Mrs. Blood refused to assent to. The closing of the purchase, which Melhado had made through Waddell at the auction sale, had been adjourned until the date for the closing of Mrs. Blood's purchase, on January 24th. Upon that occasion, a deed from Hernz, as executor and trustee, was delivered to Melhado and

Melhado delivered a deed to Mrs. Blood. At the same time there was delivered the mortgage for $30,000, made by Melhado to Moller. Mrs. Blood completed the transaction of purchase at that time by paying $6,750 in cash and by assuming the mortgage for $30,000. This, with the amount paid upon the execution of the contract of sale, made up the whole consideration of $40,000. At the same time, Hernz received from Melhado the sum of $32,500, for which the premises had been struck down at the auction sale. Mr. Wandell approved of the title and so assured Mrs. Blood, who paid his bill. After holding the title for about a year, Mrs. Blood conveyed the premises to her daughter, Miss Fogg, who is now the defendant Mrs. Koss, for the expressed consideration of love and affection, and subject to the mortgage; the payment of which Miss Fogg assumed. In the transaction, which resulted in Mrs. Blood's agreement to purchase the property, she was represented by her brother-in-law, Mr. Blood, in so far as the negotiations for the contract of sale were concerned; by Mr. Wandell in the examination of the title and, generally, by Mr. Lobenthal, the lawyer especially employed by her to look after her interests. Except upon the occasion of executing the contract of sale and purchase and upon the occasion of the closing of the title, Mrs. Blood had no communication, nor relations, with any of the parties to the transaction. It is conceded that the proceedings prior to and upon the sale of the premises at public auction were legally and fairly conducted. Some three months or more before the auction sale, the executor Hernz had been charged, personally, with a deficiency of over $27,000, in proceedings for an accounting as to the estate in his hands. In 1893 he was removed as trustee and the plaintiff was appointed, under a decree of the Surrogate's Court, trustee in his place. There was evidence upon the trial bearing upon the question of the market value of the property; from which it appears that at the price of $40,000 Mrs. Blood thought she was getting a good bargain. The evidence also shows that the relations between Melhado and Hernz were of an intimate character, and had subsisted for several years. They

occupied adjoining offices and were in more or less close busi-
ness relations. Melhado was living upon the premises and the
lease had been made by the trustee Hernz to Melhado's wife,
under her maiden name. It also appeared that the ten per
cent required to be paid by the purchaser of the property at
the auction sale was not, in fact, paid at the time and that the
auctioneer held Melhado's check, representing the ten per cent,
until, upon the execution of Melhado's contract of sale to
Mrs. Blood, the former received the deposit made on account
of Mrs. Blood's purchase.

The trial court decided in favor of the plaintiff; who
entered judgment accordingly. On appeal to the General
Term of the Supreme Court, in the first department, the
judgment of the Special Term was reversed, upon questions
of fact and upon questions of law, and a new trial was ordered.
The plaintiff then appealed to this court; giving the usual
stipulation for judgment absolute in the event of an affirmance.

*Alfred G. Reeves* and *Francis Wellman* for appellant.
Since it clearly appears in the body of the order appealed
from that the order was made upon questions of fact and
questions of law, and the justices at General Term were
divided upon the question whether there was evidence sup-
porting or tending to support certain findings, both questions
of fact and questions of law are presented to this court upon
this appeal. (Code Civ. Pro. §§ 1337, 1338.) The transac-
tions between Hernz, Melhado and Waddell constituted a
fraud upon the beneficiaries of the estate of which Hernz
was trustee. Had an action on behalf of the beneficiaries of
the trust been brought against Hernz, Melhado and Waddell,
after the conveyance to Melhado, and before Mrs. Blood had
paid the purchase money and received her conveyance, the
transfer of the property would have been set aside as fraudu-
lent and void. (*People* v. *Open Board of Stock Brokers'
Building Co.*, 92 N. Y. 98; *Dodge* v. *Stevens*, 94 N. Y. 209;
*Moore* v. *Moore*, 5 N. Y. 256; *Conkey* v. *Bond*, 36 N. Y. 427;
*Fulton* v. *Whitney*, 66 N. Y. 548; *Scholle* v. *Scholle*, 101 N. Y.

167; 1 Perry on Trusts, §§ 195, 211; *Hart* v. *S. P. P. Assn.*, 79 Hun, 358; *In re Johnston*, 74 Hun, 618, 621; *Bedell* v. *Bedell*, 37 Hun, 419; *Sistare* v. *Hecksher*, 45 N. Y. S. R. 699; *Graves* v. *Spier*, 58 Barb. 349; *Parker* v. *Conner*, 93 N.Y. 118.) The defendant Mrs. Blood was not a *bona fide* purchaser without notice of the fraud or breach of trust. Before she took her conveyance of the property in question and paid the consideration for the same, she had notice of the violation of his trust by Hernz and of the fraud and wrong being done the trust estate, which notice was sufficient to deprive her of the character of a *bona fide* purchaser of said property. (*Constant* v. *University of Rochester*, 111 N. Y. 604; *Hall* v. *Germain*, 131 N. Y. 536, 538; *Slattery* v. *Schwannecke*, 118 N. Y. 543; *Le Neve* v. *Le Neve*, 2 Lead. Cas. Eq. 65, 75; *Cragie* v. *Hadley*, 99 N. Y. 131; *Holden* v. *N. Y. & E. Bank*, 72 N. Y. 286; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Welsh* v. *G. A. Bank*, 73 N. Y. 424; *Myers* v. *M. L. Ins. Co.*, 99 N. Y. 1; 1 Perry on Trusts, § 222; Weeks on Attorneys, 407, § 237; 2 Pom. on Eq. Juris. [2d ed.] § 666; *Bank of U. S.* v. *Davis*, 2 Hill, 451; *Brumfield* v. *Boutall*, 24 Hun, 451.) The defendant Mrs. Koss is not a purchaser for value. Therefore, her title is no better than was that of her donor, Mrs. Blood. (*Ten Eyck* v. *Whitbeck*, 135 N. Y. 40; *Young* v. *Heermans*, 66 N. Y. 374; *Oliver* v. *Bennett*, 65 N. Y. 559; *Cornwall* v. *Davis*, 23 Abb. [N. C.] 125; *Vandervoort* v. *Smith*, 2 Caines Cas. 155; *Cutler* v. *Wright*, 22 N. Y. 472; *Haines* v. *N. Y. C. & H. R. R. R. Co.*, 145 N. Y. 235; *People* v. *Stephens*, 52 N. Y. 306; 1 Greenl. on Ev. §§ 27, 186; 2 Whart. on Ev. § 1110; *Weaver* v. *Barden*, 49 N. Y. 286; *Jewett* v. *Palmer*, 7 Johns. Ch. 67; *Westbrook* v. *Gleason*, 79 N. Y. 23; *Bridgman* v. *Green*, 2 Ves. 627; 1 Perry on Trusts, § 211; *Durnherr* v. *Rau*, 135 N. Y. 219; *Comley* v. *Dazian*, 114 N.Y. 161; *K. L. Ins. Co.* v. *Nelson*, 78 N. Y. 137; *Wager* v. *Link*, 134 N. Y. 122; Pom. Eq. Juris. §§ 747, 751; *Wormley* v. *Wormley*, 8 Wheat. 421; *Warner* v. *Winslow*, 1 Sandf. Ch. 430; *Sargent* v. *Eureka S. A. Co.*, 46 Hun, 19; *Penfield* v. *Danbar*, 64 Barb. 239.) The trial

court committed no error in the receipt or use of evidence or admissions made by Hernz, Melhado and Mrs. Blood. (*Cook* v. *Barr,* 44 N. Y. 156; *Loos* v. *Wilkinson,* 110 N. Y. 195; *Wright* v. *Nostrand,* 94 N. Y. 31; *Mott* v. *C. Ice Co.,* 73 N. Y. 543; *Kain* v. *Larkin,* 131 N. Y. 300; *Clark* v. *Beecher,* 154 U. S. 631; *Coddington* v. *Von de Venter,* 19 Wkly. Dig. 123; *Jones* v. *Jones,* 137 N. Y. 610, 614; 1 Greenl. on Ev. §§ 171, 173, 174, 177, 178; Chase's Stephen's Digest, 39; *Stowell* v. *Hazelett,* 66 N. Y. 635; *Von Sacks* v. *Kretz,* 72 N. Y. 548; *Pringle* v. *Leverich,* 97 N. Y. 181; *Truax* v. *Slater,* 86 N. Y. 630; *Clews* v. *Kehr,* 90 N. Y. 633; *Dodge* v. *Trust Co.,* 93 U. S. 379.) The trial court committed no error in the conclusion of law that "the proceedings in Surrogate's Court resulting in the decree, and the said decree, are not a bar or defense to this action." (*Van Bokkelin* v. *Ingersoll,* 5 Wend. 315; *Craig* v. *Ward,* 1 Abb. Ct. App. Dec. 454; *Johnson* v. *Powers,* 139 U. S. 156; *Bartlett* v. *Spicer,* 75 N. Y. 534; 1 Greenl. on Ev. § 528; *Wilcox* v. *Howell,* 44 N. Y. 398; *Van Deusen* v. *Sweet,* 51 N. Y. 378; *Brown* v. *Bowen,* 30 N. Y. 519; *N. Y. R. Co.* v. *Rothery,* 107 N. Y. 310; *Dezell* v. *Odell,* 3 Hill, 215; *Galway* v. *M. E. R. Co.,* 128 N. Y. 132; *Livingston* v. *Bishop,* 1 Johns. 290; *Woods* v. *Pangburn,* 75 N. Y. 495; *Knickerbacker* v. *Colver,* 8 Cow. 111.)

*John E. Parsons* for respondents. There is no evidence in the case of any improper conduct on the part of Hernz in or about the sale. (*Roberts & Co.* v. *Buckley,* 145 N. Y. 215, 224; *Constant* v. *University of Rochester,* 133 N. Y. 640, 648; *Baird* v. *Mayor, etc., of N. Y.,* 96 N. Y. 567; *Bernheimer* v. *Rindskopf,* 116 N. Y. 428, 436; *Coleman* v. *G. F. Ins. Co.,* 99 N. Y. 36, 42.) If fraudulent collusion or misconduct on the part of Hernz and Melhado had been shown, that was not sufficient to impeach the title of Mrs. Blood. Nor could her title be impeached by notice sufficient to put her upon inquiry. (*Bush* v. *Roberts,* 111 N. Y. 278; *Stearns* v. *Gage,* 79 N. Y. 102; *Jacobs* v. *Morrison,* 136 N. Y. 101;

*Farley* v. *Carpenter*, 27 Hun, 359; *Wilson* v. *Marion*, 147
N. Y. 589; *Jonasson* v. *Eames*, 21 N. Y. Supp. 714; 142 N.
Y. 653; *Parker* v. *Conner*, 93 N. Y. 118.)   The test of good
faith is not whether the facts brought home to the grantee
were such as might have enabled a shrewd or intelligent
man to ascertain the fraud if he had made an inquiry,
but the test is whether the facts proved are such as to
justify the conclusion that the grantee in this particular
case was guilty of bad faith in not making the inquiry.
(*Acer* v. *Westcott*, 46 N. Y. 384; *Brown* v. *Volkening*, 64 N.
Y. 76; *Kellogg* v. *Smith*, 26 N. Y. 18; *Birdsall* v. *Russell*,
29 N. Y. 220; *Parker* v. *Conner*, 93 N. Y. 118; *C. Nat.
Bank* v. *Diefendorf*, 123 N. Y. 191.)   The rule which defines
the degree of notice required to attack the title of a purchaser
for value is not qualified or affected by the nature of the out-
standing right or equity which has been injured by the grantor's
conveyance.   (*Brown* v. *Volkening*, 64 N. Y. 76; *Stearns* v.
*Gage*, 79 N. Y. 102; *Jacobs* v. *Morrison*, 136 N. Y. 101;
*Farley* v. *Carpenter*, 27 Hun, 359; *Wilson* v. *Marion*, 147
N. Y. 589; *Birdsall* v. *Russell*, 29 N. Y. 220; *Magee* v.
*Badger*, 34 N. Y. 247; *B. B. Bank* v. *Hoge*, 35 N. Y. 65;
*Parker* v. *Conner*, 93 N. Y. 118; *Jonasson* v. *Eames*, 21 N.
Y. Supp. 714; *Bush* v. *Roberts*, 111 N. Y. 278.)   The deed
from Mrs. Blood to Mrs. Koss having been made in considera-
tion of her approaching marriage to Charles G. Koss, and that
marriage having been consummated, she must be held to be a
purchaser for value.   (*Sterry* v. *Arden*, 1 Johns. Ch. 261;
*Peck* v. *Vandemark*, 99 N. Y. 29; *Wright* v. *Wright*, 54 N.
Y. 437; *Prewit* v. *Wilson*, 103 U. S. 22; *Sonstiby* v. *Keeley*,
11 Fed. Rep. 578; *Bowen* v. *Beck*, 94 N. Y. 86; *Russell* v.
*Pistor*, 7 N. Y. 171.)

GRAY, J.   The position taken by the appellant is, first, that
the transactions between Hernz, Melhado and Waddell, and
the consequent conveyance from Hernz, as executor and trus-
tee, to Melhado, constituted a fraud upon the estate in Hernz's
hands; and, second, that Mrs. Blood was not a *bona fide* pur-

chaser, without notice of the fraud.   I think it would be diffi-
cult to deny some degree of justification to the conclusion
reached by the trial judge, that the transaction as conducted
between Hernz, Waddell and Melhado, whereby the real estate
in question was acquired and reconveyed at a profit to the
latter, amounted to a fraud upon the beneficiaries of the trust.
The evidence was of a character to justify an inference that
there was a guilty combination, or a collusion, between these
parties to benefit one, if not more, of them at the expense of
the trust estate.   It is true that the sale at auction is unim-
peached and that it is not proved that Hernz shared in the
profit; but there is room for strong inferences adverse to him.
Considering the fact of a sale by the trustee, subject to the
somewhat depressing influence of a lease at a low rental, with
most of the term unexpired; that the property was bid in by
Melhado, whose wife was the lessee; that Melhado and
Hernz had been intimate friends and business associates;
that, instead of requiring Melhado to complete his pur-
chase at the time fixed by the terms of the auction sale,
Hernz allowed the matter to be postponed, until Melhado
could find a purchaser at a profit and a party willing to
loan $30,000 upon the property, and that no money was
required to be paid upon the sale at auction, nor until the
requisite amount was obtained through the deposit by Mrs.
Blood upon her subsequent purchase — these and other facts,
bearing upon the relations subsisting between Hernz and Mel-
hado and Hernz's assistance in procuring for Melhado a resale
at an advanced price, might well be deemed to constitute such
badges of fraud as would vitiate the transaction, if it stood
there, at the instance of the beneficiaries of the trust, or their
representative, the plaintiff.   But, in the view which I take of
Mrs. Blood's relation to the matter, it becomes unnecessary to
pass upon the question of the validity of the transaction as
between Hernz and Melhado.   I think we must agree with
the prevailing opinion at the General Term, that Mrs. Blood
was not only a purchaser for value, but in good faith, and that
the evidence does not warrant the conclusion that she either

had actual notice of any fraudulent motive on the part of Hernz to defraud the estate, or any knowledge of facts or circumstances equivalent to such notice. The rule, as it was early laid down in the case of *Williamson* v. *Brown* (15 N. Y. 354), has not been departed from in any subsequent case, of which I am aware. That was that, where a purchaser of land has knowledge of any facts sufficient to put him upon inquiry as to the existence of some right, or some title, in conflict with that he is about to acquire, he is presumed, either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a *bona fide* purchaser. Many subsequent cases in this court have rested upon the rule in *Williamson* v. *Brown*. But all are to the point that a purchaser for a valuable consideration is entitled to be protected in his title and, in the absence of actual notice of fraud, it is necessary that the facts and circumstances, relied upon to charge him with knowledge of the fraud, should be of a character equivalent to notice. If the facts within the knowledge of the purchaser are of such a nature, as, in reason, to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed. (See *Le Neve* v. *Le Neve*, 2 W. & T. Lead. Cas. Eq. 146; *Williamson* v. *Brown, supra*; *Stearns* v. *Gage*, 79 N. Y. 102; *Parker* v. *Conner*, 93 N. Y. 118; *Bush* v. *Roberts*, 111 N. Y. 278; *Jacobs* v. *Morrison*, 136 N. Y. 101.) I will assume in the present case, for the purpose of the discussion, that the beneficiaries of this estate might be regarded as having such equitable interests in the property as to impose a stricter duty of vigilance in the case of an intending purchaser, than would be required where the parties interested were the general creditors of the grantor, and with that assumption, which perhaps is barely justified in this case, I still am unable to perceive in what way Mrs. Blood was chargeable with the neglect of any duty of inquiry resting upon her by reason of the circumstances. Her rela-

tions commenced with Hernz, and his alleged confederates in the transaction, at the time of the execution of the contract of sale to her by Melhado. Intermediate that time and the closing of the title, she was in fact represented only by the lawyer, whom she had employed to look after her interest, Mr. Lobenthal, and by Mr. Wandell, the lawyer for the mortgagee, Moller, whose examination of the title she had agreed to pay for and was willing to rely upon. So far as her brother-in-law, Blood, was concerned, it does not appear that he had any knowledge of facts which would excite a suspicion as to the motives of Hernz; but, even if he had, his agency in the matter practically ceased with the termination of the negotiations for the purchase of the property through the real estate agent, Sloan. When Mrs. Blood appeared again upon the scene, it was at the time of the closing of her purchase; when, undoubtedly, she came into personal communication with Hernz and Melhado. At that time, of course, several facts must be deemed to have come under her observation; such as the fact that Melhado was willing to cancel the lease of the property, subject to which it had been sold at auction; the fact that he availed himself of the payments by her of the purchase moneys, in order to complete his own purchase from the trustee, and the fact that Melhado was making a profit of $7,500 in the transaction, to the knowledge of the trustee. But there was nothing in these facts, which, in reason, should have excited her suspicions as to the good faith of these parties, with whom she was dealing, and have suggested some inquiry into their relations and dealings. It was not unnatural that Melhado, being the lessee of the premises, should have attended and have bid them in upon the auction sale and if the purchase was so advantageous in price, as to enable him to make a quick profit upon a resale, that, upon its face, simply exhibited keenness in business and would hardly have justified Mrs. Blood in suspecting the transaction and the good faith of the actors in it. That he was willing to cancel the lease upon the premises was a natural act on his part, in order to gain the profit upon a resale.

She was entitled to take the matter as it then appeared to her, in the absence of any definite information upon which she could act. She was not called upon to exercise that same cool and reflective judgment, which, perhaps, when turning over all the facts in her mind deliberately, might have given rise to some doubts as to their significance and their bearing upon those interested in the result of the trustee's sale. It did not appear then, nor does the evidence show, that the profit, which Melhado made upon his resale to her, was any gain to Hernz, personally; and if the evidence does not reveal that fact, how can we assume that investigation would have been useful? The question is not whether Mrs. Blood *could* have discovered the existence of any fraud by an inquiry; but it is whether, acting as an ordinarily prudent person would have done, she was called upon, under the circumstances, to make inquiry. Were the circumstances such as to necessitate the making of some inquiry, at the peril of being charged with the knowledge of some then unperceived fact? However strong the circumstances may have seemed to militate against the good faith of Hernz and Melhado in the transaction, I do not think they would have warranted Mrs. Blood in then declaring that some collusion existed to defraud the beneficiaries of the trust estate.

But it is argued, on behalf of the appellant, that Mrs. Blood was chargeable with knowledge gained by her attorneys, Wandell and Lobenthal. Wandell's agency for Mrs. Blood did not extend beyond the examination of the title which she was to acquire, and while notice of any facts coming to him in relation to the title, and affecting it with liens or equities, would have been constructive notice to her, it does not appear that there were any such. Hernz sold under the power of sale in the will and there is no complaint that it was insufficient for that purpose, or that it was inadequately executed. Both he and Lobenthal were aware of the advantageous purchase made by Melhado of the trust property; but, in view of the authorized and fairly conducted public sale, what was there to suggest collusion with respect to the resale? So far as the evi-

dence shows, an inquiry could not have resulted in the discovery of anything upon which to rest an objection to the title. They might have regarded the trustee as having acted improvidently ; but that is not enough. Wandell could hardly be assumed to have had any doubt with respect to the validity of Melhado's title, when he was passing it upon the large loan made by Mr. Moller, his client. He was a lawyer of standing and of respectability, recommended to Mrs. Blood as being competent upon such questions, and it does not appear in the evidence that he gained any knowledge of facts, other than what the records would give to him, or than what came under his observation upon the closing of the title. It does not appear that he knew any more than she did about the relations of Hernz and Melhado and, moreover, his duty towards her ended with his report, at the time of the closing of the title, that he approved of it. So far as Mr. Lobenthal is concerned, I find nothing in the evidence, which charges him with any knowledge of an intent on the part of Hernz to defraud the estate, or of any collusion between Melhado and Hernz, or of any other facts than were apparent upon the face of the matter. He did not know Hernz. He had only seen him once or twice and his testimony does not tend to show any knowledge in him of any facts which, being chargeable to his client, imperilled her title for failure of further inquiry. A careful consideration of the record fails to find any support for the contention of the appellant that Mrs. Blood was not a *bona fide* purchaser.

The conclusion reached renders it unnecessary to consider the questions relating to the defendant Mrs. Koss ; to whom, as her daughter, and for love and affection, Mrs. Blood subsequently conveyed the premises.

The order of the General Term should be affirmed and, under the stipulation of the appellant, final judgment should be ordered in favor of the respondents, with costs.

All concur, except BARTLETT, MARTIN and VANN, JJ., dissenting.

Order affirmed and judgment accordingly.