long before his decease.  By virtue of the assignment, in which she joined, she thereby, until the husband's debt had been paid, parted with all her interest in such policies.  The premiums thereafter used in keeping such policies alive were not for her benefit, but for the benefit of the husband and this plaintiff.  The husband had the right—and it was a laudable act on his part—to use so much of his own property as he saw fit to keep those policies alive, in order that he might secure to his creditor the payment of his claim.  It needs no argument to demonstrate that, if the plaintiff's claim against the husband's estate exceeds the proceeds of the policies, and for that reason he is entitled to take the entire proceeds, the premium paid cannot be included in the $500 which the husband had a right to use for the purpose of creating a fund for the benefit of his wife after he had died.

It follows, therefore, that the judgment appealed from must be reversed, with costs, and, inasmuch as the plaintiff cannot, under any circumstances, recover in this action, the complaint must be dismissed, with costs to the defendant Charlotte Domeyer.  All concur.

---

(37 Misc. Rep. 209.)

### GANS v. WEINSTEIN et al.

(Supreme Court, Special Term, New York County.  February, 1902.)

1. BANKRUPTCY—FRAUDULENT SALE—SETTING ASIDE.

    Where a vendor was in financial difficulties, and sold his stock for $6,700 to purchasers who had valued it at $12,000, and who knew of his financial troubles, the sale will be set aside at the suit of his trustee in involuntary bankruptcy, and the purchasers will be made to account for its value.

2. SAME—KNOWLEDGE OF PURCHASERS.

    Where purchasers of goods from an insolvent know of facts sufficient to put them on inquiry and to arouse the suspicions of ordinarily prudent persons, they will be chargeable with that knowledge which a reasonable inquiry would have revealed.

Action by Howard S. Gans, trustee in bankruptcy of Morris Moses, against Samuel Weinstein and others.  Judgment for plaintiff.

Paul M. Herzog, for plaintiff.

J. Harold Warner, for defendants.

FITZGERALD, J.  Prior to January, 1899, Morris Moses owned and conducted a department store in Helena, Mont., known as the "Golden Eagle."  After the close of the holiday season in December, 1898, an inventory was taken under his direction, from which it appears that the stock comprised men's, women's, and boys' clothing, dry goods, crockery, groceries, boots, shoes, men's furnishing goods, and a quantity of other property, such as is generally carried by stores of this character, and of the cash value of about $25,000.  An attorney of this city visited Helena in the latter part of January following, having a power of attorney from the said Morris Moses authorizing him to dispose of the stock, which was then valued by its owner at $28,000.  This attorney offered the stock in the Golden Eagle Building for sale to a merchant from Butte, Mont., and also to these defendants.  The defendants, who,

it appears, were Moses' strongest competitors in business at Helena, purchased the entire stock in his store a few days later for $7,500. At this time, or shortly thereafter, certain goods consigned to Moses, but held by the railroad company under orders from the consignors and for freight charges, were claimed by defendants, who demanded a rebate of $800 on account of their nondelivery. This demand was acquiesced in, despite the fact that these goods were not included in the sale. At a conference subsequently held, defendants' attorney advised defendants not to complete their purchase, as a sale made under the conditions then existing would, in his opinion, be subject to attack by Moses' creditors. Rumors were rife at the time affecting the financial condition of the vendor. Attorneys for three or four creditors had presented claims against him, and some of these claims were made in the presence of defendants. On January 26th, long after banking hours (about 8:30 p. m.), a conference was held at the office of the Union Bank & Trust Company, Helena, which lasted until midnight or beyond. The persons present were the cashier of the bank, the defendants Samuel and Isidore Weinstein, the attorney of Morris Moses, Frederick Moses, brother of Morris, and two of Moses' creditors. After much discussion, defendants made their note for $7,500, which was discounted by the bank, and the money placed to the credit of Morris Moses. Frederick Moses, under power of attorney from his brother Morris, drew checks in defendants' presence against the credit to satisfy the Neuman claim of $800, and the bank claim of $2,500 for a note not yet due, discounted by it for the vendor. These payments, with others made at the time, reduced Morris Moses' account to $3,080, which sum was, by an agreement between the New York attorney, representing Moses, and the defendants, to be held by the bank until the delivery of a bond of indemnity to the defendants for their protection against "any claim, suit, or controversy that may be made, instituted, or maintained by the creditors of Morris Moses." This bond was subsequently furnished, and the balance of the account in the bank, after deducting the amount of the rebate allowed to defendants, was paid to the H. B. Claflin Company. Early on the morning after the conference at the bank, the defendants began the removal of the stock from the Golden Eagle store. Three or four wagons were employed for three or four days in doing this work. The stock, when transferred, was distributed by defendants among their various departments; and they now claim that they are unable to explain anything regarding its ultimate disposition, that no record thereof was kept in any books, and that it is impossible to tell the items or amount of sales, or the items or value of the articles, if any, remaining on hand. On March 25, 1899, on the petition of Joseph Michaels and others, duly filed in the United States district court for the Southern district of New York, Morris Moses was adjudged a bankrupt; and on the 23d day of October following the plaintiff was duly appointed trustee in bankruptcy, and as such trustee brought this action, and demands that the sale and transfer of January 26, 1899, be adjudged fraudulent, null, and void, and that the defendants account to the plaintiff for the value of the

goods delivered to them under the transfer. The facts already stated, and other facts disclosed by a careful consideration of the voluminous record, among which are that this stock was valued by the defendants at $12,000, and that the actual price paid therefor was $6,700, convince me that sufficient facts were brought to the attention of the vendees to stamp this sale, within well-settled principles, as one which it is the duty of the court to set aside. "If the facts within the knowledge of the purchaser are of such a nature as, in reason, to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person, and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed." Anderson v. Blood, *152 N. Y. 285, 293, 46 N. E. 493, 495, 57 Am. St. Rep. 515.* Judgment for the plaintiff, with costs.

Judgment for plaintiff, with costs.