OPINION OF THE COURT
Eugene E. Peckham, J.
On or about May 23, 2008, defendant Rodney Darrow, acting under a power of attorney dated August 2, 2006 from his father Robert Darrow, transferred a house at 14 Camp Street, Sidney, New York, owned by his father, to defendant Donald L. Ulmer. Ulmer has stated both in his verified answer and in his affidavit, dated July 6, 2010, that the real property was transferred to him to repay a loan Ulmer had made to Rodney Darrow in the amount of $91,568.35. On or about October 21, 2008, Ulmer secured a mortgage on the property in the amount of $39,200 from defendant Community Bank, N.A. Rodney Darrow has defaulted in answering or appearing in this matter.
The power of attorney used for the transaction was a “springing power” in that it only became effective when a physician made a statement that Robert Darrow suffered from “diminished capacity that would preclude me from conducting my affairs in a competent manner” (former General Obligations Law § 5-1506 [5]). The box on the power of attorney authorizing the agent to make gifts was not initialed. Therefore, Rodney was not authorized to make gifts of Robert’s property to himself or anyone else.
On or about October 12, 2007, Dr. Stephen L. Dygert, at the request of the Delaware County Department of Social Services, filled out and delivered to that department a form for Social Security entitled, “Physician’s Statement of Patient’s Capability to Manage Benefits.” In that statement, the doctor said:
“Patient has dementia and is on Razadyne ER. This was started in September of ‘06 and he did poorly on the dementia questionnaire which I gave him about a year ago. I last saw him on 4/7/07 and he seemed stable but I don’t think he is in any position to manage his money.”
He also checked boxes on that form stating that Robert was not capable of managing his benefits and that he was not expected to be able to manage funds in the future.
It is well settled that summary judgment may only be granted where there is no triable issue of fact. (Phillips v Kantor & Co., 31 NY2d 307 [1972].) Issue finding rather than issue determi *190 nation is the key. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) The affidavits and other papers are scrutinized in the light most favorable to the party opposing the motion. (Robinson v Strong Mem. Hosp., 98 AD2d 976 [4th Dept 1983].) However, the party opposing summary judgment must “come forward and lay bare his proofs of evidentiary facts showing that there is a bona fide issue requiring a trial. . . [He] cannot defeat this motion by general conclusory allegations which contain no specific factual references.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:16, at 27; Hanson v Ontario Milk Producers Corp., 58 Misc 2d 138 [Sup Ct, Oswego County 1968].)
Plaintiff argues that it sent a notice to admit to defendants pursuant to CPLR 3123 and that the answering denials were improper because they were signed by defendants’ attorneys and were not a sworn statement of the parties. The requested admission was that defendants did not possess a signed statement from a physician as to Robert Darrow’s incapacity. Defendants correctly reply that a notice to admit cannot be used to get an admission of ultimate or conclusory facts central to the litigation. (Scavuzzo v City of New York, 47 AD3d 793 [2d Dept 2008]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Allen, 232 AD2d 80 [1st Dept 1997]; Siegel, NY Prac § 364, at 602 et seq. [4th ed].)
The parties have focused their arguments on the question of whether the statement of Dr. Dygert was sufficient to cause the “springing power” to come into effect, thereby permitting Rodney D arrow to sign the deed for his father. The power itself requires only a “written statement” by a physician. Plaintiff argues that because defendants Ulmer and Community Bank did not have a copy of such statement, they should have been put on notice that the rights of Robert Darrow in the property were being violated.
Former General Obligations Law § 5-1506 (2) provides that the power becomes effective “upon the written declaration of the person or persons named in the instrument that the specified contingency has occurred, without regard to whether the specified contingency has occurred.” Neither counsel nor the court have found any cases interpreting this provision.
Nowhere in the power of attorney itself, nor in the statute does it specify the form of the statement, other than that it must be in writing. Nor does the power of attorney or the statute require that any person accepting the authority of the agent *191 to act under the power receive or have possession of the written statement.
It is significant that the statute provides that it does not matter whether the contingency has actually occurred, which indicates the important factor is that there is a written statement, not its correctness. If the person dealing with the holder of a springing power of attorney is not required to determine whether or not the principal is actually incapacitated, it follows he or she also does not have to inquire about the existence of the statement itself. Thus, the mere fact that the transfer to Ulmer was done with a “springing power” was not sufficient to require either the purchaser, Ulmer, or the mortgagee, Community Bank, to make further inquiry about the transaction.
However, it is black letter law that the holder of a power of attorney is an agent of the principal. (2A NY Jur 2d, Agency and Independent Contractors § 61, at 103.) It is also black letter law that the holder of a power of attorney has a fiduciary duty to the principal. “An agent must act in the utmost good faith and undivided loyalty toward the principal and in accordance with the highest principles of morality, fidelity, loyalty and fair dealing.” (2A NY Jur 2d, Agency and Independent Contractors § 217, at 240.)
Ulmer knew that he had loaned money to Rodney Darrow, not Robert Darrow, and that Rodney was repaying him with property that belonged to Robert. Ulmer also knew the house to be transferred was owned by Robert Darrow and not by Rodney Darrow (complaint 1f 12; Ulmer affidavit, dated July 6, 2010, HIT 5-6). He knew this because the deed used to transfer the house stated that Rodney Darrow was acting as power of attorney for his father in making the house transfer (exhibits C, E attached to Rase affidavit, dated June 21, 2010).
It is elementary that the holder of a power of attorney breaches his fiduciary duty where he repays his own debt with property belonging to the principal. The agent is using property that does not belong to him for his own purposes, in violation of his duty. Ulmer knew that Rodney was doing that very thing; he has admitted it in his verified complaint and his affidavit (complaint HIT 11-13; Ulmer affidavit, dated July 6, 2010,1i1i 3-6). As a result, Ulmer knew or should have known that Rodney was breaching his fiduciary duty. Thus Ulmer is liable to Robert for the value of that property (Fitzner v Schenectady Trust Co., 133 AD2d 1013 [3d Dept 1987]; 470 W. End Corp. v East Riv. Sav. Bank, 102 Misc 2d 1024, 1028 [Civ Ct, NY County 1980]). *192 Put simply, Ulmer should have known Rodney could not repay his own debt with Robert’s property.
Furthermore, Ulmer cannot argue he thought Robert was making a gift of the property to Rodney for transfer to Ulmer for three reasons. First, former General Obligations Law § 5-1505 (2) (a) (2) provides, “The agent may not transfer the principal’s property to himself or herself without specific authorization.” No such authorization has been pleaded or proved by Ulmer. Second, the power of attorney did not authorize gifts, as the appropriate box was not initialed by Robert. Third, the amount repaid to Ulmer, $49,300, exceeded the amount of $10,000 that could be authorized as a gift in the power of attorney form (plaintiffs exhibit C; Ulmer affidavit 1i 6). A simple examination of the power of attorney would have disclosed these facts.
Real Property Law § 266 provides:
“This article does not in any manner affect or impair the title of a purchaser or incumbrancer for a valuable consideration, unless it appears that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.”
The burden is upon Ulmer to prove that he did not take the property with “previous notice of the alleged prior fraud by the seller” (Neuhauser v Polanco, 14 AD3d 674, 675 [2d Dept 2005]; Public Adm’r of Kings County v Samerson, 298 AD2d 512 [2d Dept 2002]). Ulmer has not proved he did not have prior notice of Rodney’s fraud in breaching his fiduciary duty. As set forth above, Ulmer had actual notice of Rodney’s fraud. For all these reasons, Ulmer is liable to Robert for the value of the property in question. (Anderson v Blood, 152 NY 285 [1897].)
However, there is a different result as far as Community Bank is concerned. Real Property Law § 266 provides that the title of an incumbrancer for a valuable consideration is not impaired “unless it appears that he had previous notice of the fraudulent intent of his immediate grantor.” Debtor and Creditor Law § 278 (1) is similar. Community Bank’s immediate grantor was Ulmer. As set forth above, the mere fact of the “springing power” in the chain of title was not sufficient to put the bank on notice of any fraudulent activity. Unlike Ulmer, the bank had no reason to know, at the time of the mortgage, of Rodney’s breach of fiduciary duty by repaying his own loan with his father’s property.
*193 The Court of Appeals has said in Anderson v Blood, “a purchaser for a valuable consideration is entitled to be protected in his title and, in the absence of actual notice of fraud, it is necessary that the facts and circumstances, relied upon to charge him with knowledge of the fraud, should be of a character equivalent to notice.” (152 NY at 293.) Community Bank did not have actual notice of fraud and thus is a bona fide purchaser for value.
A case similar to the present one is Miner v Edwards (221 AD2d 934 [4th Dept 1995]). In that case, Lyona Steward gave real property to her two daughters. Five years later, the daughters sold the property to purchasers named Richard. The Richards financed the purchase with a bank mortgage. The court held, citing Real Property Law § 266, Debtor and Creditor Law § 278 and Anderson v Blood (supra), that “[e]vidence of a gratuitous transfer in the chain of title does not, without knowledge of fraud, render a conveyance fraudulent and voidable as against a purchaser or mortgagee for value.” (221 AD2d at 934.) As a result, the court affirmed the denial of summary judgment against the mortgagee bank and the Richards, but held that summary judgment should have been granted against the surviving daughter as the immediate transferee from her mother.
For all the foregoing reasons, it is held that the motion for summary judgment on the liability of Donald L. Ulmer is granted and his cross motion is denied. But the cross motion for summary judgment of Community Bank dismissing the complaint as to it is granted and plaintiffs motion for summary judgment against the bank is denied.
An inquest as to damages against Donald L. Ulmer shall be scheduled.