[976 NYS2d 34]

Gloria Miller-Francis, Respondent, v Maryann Smith-Jackson et al., Defendants, and Mortgage Electronic Registration Systems, Inc., et al., Appellants.

First Department, November 21, 2013

**APPEARANCES OF COUNSEL**

*Delbello Donnellan Weingarten Wise & Wiederkehr, LLP*, White Plains (*Daniel G. Walsh* of counsel), and *Belowich &*

*Walsh LLP*, White Plains (*Daniel G. Walsh* of counsel) for appellants.

*Legal Services NYC-Bronx*, Bronx (*Nicole Woods* of counsel), for respondent.

### OPINION OF THE COURT

ACOSTA, J.

The primary issue in this case is whether a mortgage lender can ignore signs of a "foreclosure rescue" scheme simply because the title to the subject property appears to be in order.* The issue arose in the context of a motion by defendants Mortgage Electronic Registration Systems, Inc. (MERS) and Accredited Home Lenders, Inc. (Accredited) for summary judgment dismissing the complaint as against them; the complaint seeks, among other things, to quiet title. Because defendants' evidence is not in admissible form, they fail to establish prima facie that they are bona fide encumbrancers. In any event, plaintiff raised triable issues of fact as to defendants' notice of the alleged fraud. Further, discovery has not been completed, and plaintiff may be able to raise additional issues of fact upon gaining access to evidence that remains in defendants' exclusive

---

* Foreclosure rescue scams, plaintiff alleges, are often perpetrated by self-described "experts" who prey upon vulnerable homeowners as foreclosure looms. The "expert," who offers to assist the homeowner in refinancing to avert foreclosure, instead dupes the owner into transferring to the expert the deed to his or her home. Eventually, the "expert" sells the property to a "straw buyer" in order to reap a profit. This a significant problem in New York, exacerbated by the subprime mortgage crisis of recent years (*see* New York State Department of Financial Services, Press Release, *Statewide "Loan Modification Scam Alert" Campaign Launched As Part of NYS Consumer Protection Board's Annual Consumer Action Day*, Mar. 4, 2010, available at http://www.dfs.ny.gov/about/press/pr100304.htm ["With the national foreclosure rate at an all-time high of 8.85 percent, and the rate in New York near 7.78 percent, many homeowners have turned to loan modification or foreclosure 'rescue' companies for help—only to realize that they've been scammed. These scam artists . . . bilk homeowners out of money, and often times their homes"]). Some reports indicate that foreclosure rates are again on the rise in New York, underscoring New Yorkers' continued susceptibility to the phenomenon of foreclosure rescue fraud (*see e.g.* Orlando Lee Rodriguez, *New York, New Jersey Emerge as Foreclosure Leaders*, Real Estate Weekly, June 26, 2013, available at http://www.rew-online.com/2013/06/26/new-york-new-jersey-emerge-as-foreclosure-leaders* ["(T)he New York City region now has one of the country's highest foreclosure rates. . . . The rate now hovers around eight percent, double the national average" (internal quotation marks omitted)]; Daren Blomquist, *Five Local Market Snapshots Show Erratic Housing Recovery*, Forbes, Aug. 26, 2013, available at http://www.forbes.com/sites/darenblomquist/2013/08/26/five-local-market-snapshots-show-erratic-housing-recovery).

possession. Thus, Supreme Court correctly denied defendants' motion. However, the court improperly granted plaintiff's cross motion to extend her notice of pendency, because an expired notice of pendency cannot be revived.

Facts and Procedural Background

Plaintiff and her mother owned their home outright until September 2004, when a tax lien of more than $23,000 was recorded against the property. In late 2004 or early 2005, plaintiff was approached by her neighbor, defendant Kathy Dukes, who said she was aware of the tax lien and knew someone who could help. Dukes introduced plaintiff to defendant Maryann Smith-Jackson, who persuaded plaintiff to transfer ownership of the property to her. Plaintiff, under the impression that she was merely acquiring a loan to help her pay the tax arrears and improve her credit, conveyed title to Smith-Jackson in September 2005. The transfer was recorded in the Office of the City Register of the City of New York on June 8, 2006.

Plaintiff made monthly mortgage payments to Smith-Jackson until late 2006, when she unexpectedly received mail addressed to defendant George Henry, followed by foreclosure papers. Unbeknownst to plaintiff, Smith-Jackson had conveyed title to Henry—a man who apparently had no intention of purchasing a house, and who plaintiff alleges was the "straw buyer" in the scam—on December 29, 2006 (the Henry closing). At the closing, Henry applied for and obtained a loan from Accredited for the entire purchase price of $500,000. Accredited thereby acquired a security interest in the form of a purchase money mortgage on the property; MERS was named on the mortgage as Accredited's nominee and the mortgagee for purposes of the recording.

Henry's deposition testimony suggests that even he may have been a victim of the scheme, since he was unwittingly coerced into purchasing plaintiff's house with a loan he claimed he could not afford. At least one representative of Accredited was present at the Henry closing, in addition to Smith-Jackson and several other (non-appealing) defendants. Henry had never met anyone from Accredited and did not fully understand that he was purchasing a home. In fact, he had not even seen the house before the closing and was unaware that plaintiff was living there. Instead, Henry believed that Smith-Jackson and others were, for some unexplained reason, helping him "sign for" a house despite his repeated statements that he did not earn enough money to pay a mortgage.

An appraisal of plaintiff's home, provided at the Henry closing by nonparty Your Home Appraisal Corp., was rife with errors indicative of fraud. For example, the appraiser significantly reduced the square footage of comparable properties as a means to inflate the value of plaintiff's house. Accredited recognized these errors, and its employee-reviewer noted that "the estimated value d[id] not appear to be supported" by the appraisal. Consequently, Accredited reduced the amount from $580,000 to $500,000 before approving Henry's loan.

Henry signed Accredited's loan application for the first time at the closing. Although the application states that he earned $10,500 per month, Accredited's loan file does not contain proof of Henry's income or credit history; there is no indication that Accredited requested or examined Henry's paystubs, tax returns, or credit report. Despite the dearth of financial information, Accredited approved a loan to Henry in the amount of $500,000.

In April 2007, Accredited filed a foreclosure action against Henry for failure to make mortgage payments. After learning of the conveyance to Henry and Accredited's mortgage, plaintiff commenced this action on August 13, 2007, against defendants and several other parties purportedly involved in the plot. Of the seven causes of action asserted by plaintiff in the complaint, three are relevant to this appeal: the claims sounding in equitable mortgage, article 15 of the Real Property Actions and Proceedings Law (to quiet title by compelling determination of claims to the subject property), and Real Property Law § 329 (to have Smith-Jackson's and Henry's deeds, and defendants' mortgage, declared void).

Plaintiff served discovery on Accredited, which only partially complied under threat of a motion to compel. As discovery was under way, defendants moved for summary judgment, arguing that Accredited was a good faith encumbrancer for value and that, therefore, they maintained a valid mortgage on the subject property.

The motion court denied defendants' motion, finding material issues of fact related to Accredited's actual or constructive knowledge of the fraud underlying Smith-Jackson's conveyance of the property to Henry. In addition, the court granted plaintiff's cross motion to lift the stay of discovery that was triggered by defendants' summary judgment motion, to extend the deadline for filing the note of issue and to extend the duration of plaintiff's notice of pendency, which was originally filed

in 2007 and had expired nearly a year before. Some time after the notice of appeal was filed, nonparty West Coast Servicing, Inc. (West Coast) acquired the mortgage as Accredited's successor in interest.

Discussion

Accredited's Status as a Bona Fide Encumbrancer

The rights of an encumbrancer for value are protected "unless it appears that [the encumbrancer] had previous notice of the fraudulent intent of [its] immediate grantor, or of the fraud rendering void the title of such grantor" (Real Property Law § 266; *Fleming-Jackson v Fleming*, 41 AD3d 175 [1st Dept 2007]). A mortgagee will be charged with constructive notice if it is "aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances of the transaction at issue" (*Mortgage Elec. Registration Sys., Inc. v Rambaran*, 97 AD3d 802, 804 [2d Dept 2012] [internal quotation marks omitted]; *Anderson v Blood*, 152 NY 285, 293 [1897] [purchaser on notice if facts would "excite the suspicion of an ordinarily prudent person"]). If a "reasonable inquiry" would reveal some evidence of fraud, then failure to "make some investigation" will divest the mortgagee of bona fide encumbrancer status (*see Anderson*, 152 NY at 293; *see also Rambaran*, 97 AD3d at 804).

A mortgagee may make a prima facie showing that it is a bona fide encumbrancer by presenting a title search showing a clear chain of title (*see Fleming*, 41 AD3d at 176; *see also FanDorf Props., Inc. v Classic Brownstones Unlimited, LLC*, 103 AD3d 589 [1st Dept 2013]; *Commandment Keepers Ethiopian Hebrew Congregation of the Living God, Pillar & Ground of Truth, Inc. v 31 Mount Morris Park, LLC*, 76 AD3d 465 [1st Dept 2010]). To raise an issue of fact in response, the opposing party must offer evidence to justify requiring the mortgagee to engage in an inquiry regarding title or fraud (*see id.*), for example, evidence that the moving party possessed documents indicating that the opposing party was in possession of the property (*see Maiorano v Garson*, 65 AD3d 1300, 1302 [2d Dept 2009]).

■ Here, defendants failed to make a prima facie showing that they are entitled to bona fide encumbrancer status because their proffered title search was neither an official search nor "certified" by the searching company (CPLR 4523). While the party opposing summary judgment "may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form," the movant is not

accorded that luxury; its evidence *must* be in admissible form (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Thus, because defendants' title search is not in admissible form, it cannot be considered in support of their argument that Accredited was a bona fide encumbrancer.

■ Even assuming that defendants had established bona fide encumbrancer status, they would not be entitled to summary judgment because plaintiff has set forth evidence that defendants had notice of the underlying fraud. For example, Henry applied for the loan for the first time at the December 29 closing. In an attempt to dismiss the significance of this, defendants' attorney states that "the re-signing of the mortgage application by the borrower is standard practice at a real estate closing." This overlooks the fact that Henry did not *re-sign* the application but, instead, signed it for the first time at the closing. If an initial submission and signing of a mortgage application at a real estate closing is not standard practice, then defendants must explain why this unconventional method did not excite Accredited's suspicion that some nefarious activity tainted the transaction.

In addition, Accredited approved a $500,000 loan to Henry—a "buyer" who had no intention of purchasing a home and appears to have been coerced into attending the closing—without any proof that he had an ability to repay it. Indeed, the record is devoid of evidence to suggest that Accredited examined Henry's paystubs, tax returns, or credit history before approving his loan application. These suspicious aspects of the transaction present issues of fact pertaining to Accredited's knowledge of the foreclosure rescue scam.

The faulty appraisal also raises an inference that Accredited had notice of the underlying fraud. Although Accredited reduced the loan amount after becoming aware of the overstated appraisal, the fact that the initial appraisal was overstated would lead a reasonably prudent lender to investigate further to determine whether the prospective borrower was involved in a transaction free of fraud.

Had Accredited conducted a reasonable inquiry into the legitimacy of the sale by Smith-Jackson to Henry, it could have discovered plaintiff's competing claim. Therefore, we cannot rule as a matter of law that defendants are entitled to summary judgment.

■ Moreover, denial of summary judgment is warranted because defendants' motion curtailed the discovery process, and

there may be evidence in their exclusive possession that would enable plaintiff to present other triable issues of fact (CPLR 3212 [f]). For instance, plaintiff served interrogatories upon Accredited, asking for the names of employees who were involved in the Henry closing. These interrogatories remain unanswered, and plaintiff would likely seek to depose any of Accredited's employees who approved Henry's loan. Those employees' impressions of the transaction, and how they became involved in it, would indicate whether they knew or suspected fraud to have been present. In addition, Henry's demeanor and statements, and those of the other defendants who were present during the closing, might have suggested that the transaction was part of a larger fraudulent scheme. For example, it is unclear whether Henry's statements of his inability to pay a mortgage were also made at the closing while Accredited was present. Further discovery would provide needed clarification.

Plaintiff also demanded production of documents relating to Accredited's underwriting policies and involvement in the Henry closing that may present issues of material fact. However, those documents have not been produced. In particular, the underwriting policies would be elucidative of whether Accredited would customarily approve a $500,000 loan without verifying the intended borrower's financial condition. If the company would ordinarily deny such a loan application, then its approval of the loan to Henry would indicate that it had at least an inkling that the conveyance was illegitimate.

Insofar as Accredited lacked knowledge of plaintiff's particular claim to the property, the presence of fraud alone—even absent knowledge of the ultimate victim's identity—ought to counsel a lender against proceeding with a transaction without conducting a reasonable inquiry. If Accredited had actual or constructive knowledge that the Henry closing was blighted by fraud, its knowledge would be enough to render the protection of Real Property Law § 266 inapplicable. That is an issue of fact that merits denial of summary judgment here. At the very least, plaintiff should be entitled to conclude discovery so that these questions may be answered. Plaintiff seeks specific evidence that would justify opposition to defendants' motion, and thus the prospective disclosure would not be a mere "fishing expedition" (*see Auerbach v Bennett*, 47 NY2d 619, 636 [1979]).

Plaintiff's Notice of Pendency

The motion court lacked the authority to extend plaintiff's notice of pendency, because plaintiff did not move for

an extension until after the notice had expired (*see Matter of Sakow*, 97 NY2d 436, 442 [2002]). Although defendants did not raise this issue before the motion court, we may consider a legal argument that appears on the face of the record and could not have been avoided if it had been raised (*see Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp.*, 65 AD3d 405, 408 [1st Dept 2009]). A notice of pendency is effective for three years from the date of filing, and a court may grant a three-year extension upon a plaintiff's motion "[b]efore expiration of a period or extended period" (CPLR 6513). Plaintiff's notice of pendency was originally filed in 2007 and thus expired in 2010. She did not move to extend it until 2011.

Accordingly, the order of the Supreme Court, Bronx County (Fernando Tapia, J.), entered on or about April 27, 2012, which denied defendants' motion for summary judgment dismissing the first, sixth and seventh causes of action as against them, and granted plaintiff's cross motion to lift the automatic stay of discovery resulting from defendants' motion, extend the deadline to file the note of issue, and extend the duration of the notice of pendency through August 31, 2013, should be modified, on the law, to deny that portion of plaintiff's motion to extend the notice of pendency, and otherwise affirmed, without costs.

GONZALEZ, P.J., MAZZARELLI and RENWICK, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about April 27, 2012, modified, on the law, to deny that portion of plaintiff's motion to extend the notice of pendency, and otherwise affirmed, without costs.