(31 App. Div. 255.)

PEETSCH v. SOMMERS et al.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

1. ATTACHMENT—PUBLICATION—REPLEVIN BY OWNER.
   Under Code Civ. Proc. § 638, in order to sustain an attachment in the absence of personal service of the summons, the publication thereof must be commenced in both of the designated newspapers within 30 days after the attachment is granted, or the attachment falls, and the sheriff, having thus lost his interest in the property, is bound to deliver it to a general owner who has brought an action of replevin for its recovery.

2. SAME.
   If, before the trial of an action in replevin, brought by the general owner of property seized by the sheriff under an attachment in an action against another party, execution has been issued in the latter action, and returned unsatisfied, the right of the sheriff to retain any property under the attachment or the execution ceases, and the plaintiff in replevin is entitled to a recovery.

3. FRAUDULENT SALE—KNOWLEDGE OF PURCHASER.

In order to render a sale for a valuable consideration invalid as against the creditors of the vendor, it is necessary that the vendee should have actual knowledge or belief, or at least actual suspicion, that the sale is being made with intent on the part of the vendor to hinder or defraud his creditors, and the doctrine of constructive notice is not applicable.

4. SAME—CONSIDERATION.

A transfer of property by the maker of promissory notes not yet due, and which he is unable to pay, to an accommodation indorser, for the purpose of protecting him against that obligation, and in payment thereof, and accepted by the indorser as a discharge of the obligation, is based upon a sufficient consideration.

Appeal from trial term, New York county.

Action by Henry Peetsch against Isaac Sommers and others. Judgment for defendants, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Campbell E. Locke, for appellant.

Morris J. Hirsch, for respondents.

INGRAHAM, J. This was an action in replevin to recover certain merchandise which had been seized by the sheriff of the city and county of New York under a warrant of attachment issued against one Edward Hughes. The plaintiff, to prove title to the property, introduced in evidence an instrument as follows:

"March 21st, 1894.

"I hereby acknowledge that I am indebted to Mr. Henry Peetsch in the sum of $950, in payment of this claim. I hereby sell and transfer all my stock of liquors now in the store S. W. Cor. of 14th St. & Ave. B, consisting of 16 barrels of various liquors and 300 bottles of various liquors.

"[Signed]    E. Hughes."

Immediately after this paper was delivered to the plaintiff, he took possession of the property as therein directed, and moved it to his own premises, from whence it was taken by the sheriff, under an attachment against Hughes and Kearney. This attachment was issued in an action in the city court on the 28th of March, 1894, and upon the same day the sheriff levied upon the property in the possession of the plaintiff. Subsequently the property was taken from the sheriff by the coroner under a writ of replevin issued in this action. The defendants claim that the transfer to the plaintiff by Hughes was made with intent to hinder, delay, and defraud creditors; and the answer interposed in this action alleged that the property levied upon was at the time of the said attachment the property of Hughes and Kearney, or that they had a leviable interest therein, and that said goods and chattels were subject to levy under and by virtue of said attachment. The defendants can only sustain their right to recover by proof that the attachment under which the levy was made was process under which they were authorized to take and to hold this property as against this plaintiff. Assuming that there was evidence justifying the jury in finding that the transfer to Hughes was without consideration, it must be apparent that if, at the time of the trial, the sheriff's right to hold this property levied on by the attachment had terminated, so that he was not then entitled to the property, or the value thereof,

the defendants could not have an affirmative judgment as against the plaintiff. Section 1727 of the Code provides that a verdict, report, or decision in favor of the defendant shall not fix the value of the chattel where the plaintiff is the general owner of the chattel, but the defendant had a special property therein, and the value of the chattel is greater than the value of special property, or the sum charged upon the chattel by reason thereof; in which case the value of the special property or the sum so charged must be fixed. In this action the plaintiff was the general owner of the property. Assuming that the transfer to him was voidable, the defendant, by virtue of his levy under his attachment, had a special interest therein; and, if the value of the sheriff's special interest was less than the value of the property, the jury were only authorized to fix the value of the special interest of the sheriff, and the sheriff would be entitled to judgment only for the amount of such special interest. Thus, if the attachment and the levy under it had become void prior to the trial of the action, so that this sheriff had not then a special interest in the property, or his interest in the property was merely nominal, he was only entitled, under this provision of the Code, to the amount of the nominal interest that he had in the chattels at the time of the trial. As before stated, the sheriff's interest in this property was the special interest he had acquired by his levy under the warrant of attachment. He was entitled to maintain possession under the warrant as long as it continued to be a valid warrant, or until it was merged in the execution issued upon the judgment obtained in that action, when he would hold the property under the execution. It appears that this warrant was issued on March 28, 1894; and the defendant Hughes, whose property the sheriff had attached, not having been previously served with the summons, an order directing the service of the summons by publication was obtained April 24, 1894. This order directed the service of the summons by publication in the New York Law Journal and the Irish American, two newspapers published in the city of New York. The publication in the Irish American commenced on the 30th of April, 1894, more than 30 days after the attachment was issued, and in the New York Law Journal on the 25th of April, 1894. Section 638 of the Code provides that the personal service of the summons must be made upon the defendant, against whose property the warrant is granted, within 30 days after the granting thereof; or else, before the expiration of the same time, service of the summons by publication must be commenced, or service thereof must be made without the state pursuant to an order obtained therefor. Under this provision of the Code, in order to sustain the attachment, the publication of the summons must be commenced in both newspapers directed by the order within 30 days after the granting of the attachment, or the attachment falls. Taylor v. Troncoso, 76 N. Y. 599. Thus, by the failure to publish the summons within 30 days after the attachment was granted, the attachment fell; and the sheriff having, under the levy, only a special interest in the property, he was only entitled to recover, not the value of the property, but the value of the special interest, which special interest had terminated before the trial. By section 709 of the Code it is provided that, where a warrant

of attachment is vacated or annulled, or an attachment is discharged, upon the application of the defendant, the sheriff must, except in a case otherwise specially prescribed by law, deliver over to the defendant, or to the person entitled thereto, upon reasonable demand, and upon payment of all costs, charges, and expenses legally chargeable by the sheriff, all the attached personal property remaining in his hands, or that portion thereof as to which the attachment is discharged; and when the attachment fell the sheriff was bound to deliver the property to the plaintiff, and his special interest therein terminated. We also think that by the entry of the judgment and the issuance of the execution thereof the attachment was merged in the execution. And upon the return by the sheriff of the execution wholly unsatisfied the right of the sheriff to retain any property under the attachment or the execution ceased. He had then no special interest in the property which would entitle him to recover the possession thereof, or its value. It is well settled that the power of the attachment is spent by the entry of the judgment and the issuance of the execution. In Lynch v. Crary, 52 N. Y. 181, it was said:

"The attachment is not discharged by the entry of judgment against the defendant, but is operative thereafter to hold the lien acquired thereby until execution issues, and to enable the sheriff to repossess himself of the property attached which may have passed from his possession, and to collect and convert the equitable assets upon which it has been levied. The remedy for the enforcement of the judgment is by execution, and by proceedings based upon it; and the attachment continues in force after judgment only for the purpose of giving effect to the lien acquired under it, and existing when the judgment was rendered."

Thus, when the judgment in this action was entered and execution issued, the effect of the attachment was spent, the sheriff could proceed only under the execution, and his right to the possession of the property would depend upon the execution in his hands, the lien acquired by the attachment being preserved only to enable such lien to be enforced under the execution; but after the return of his execution wholly unsatisfied there was no execution in force, and thus at the time of the trial there was no lien upon this property by virtue of either the attachment or the execution.

We also think there was error in the charge, which requires the reversal of the judgment. The defense interposed was that this bill of sale was given with intent to hinder, delay, and defraud creditors, and thus was void as against the attachment creditors; and the only question of fact litigated on the trial was whether or not the bill of sale was actually void as against Hughes' creditors. The court charged the jury:

"But the question whether or not there was an adequate consideration is for your determination. If Hughes had an intention to defraud his creditors, and Peetsch was not aware of it, or was not put upon his inquiry by any facts or circumstances which would put a man of ordinary prudence upon inquiry, then the transaction would not be void as far as Peetsch is concerned, and he would be entitled to hold the property, if the title were in other respects sound, and not open to criticism."

To that portion of the charge the plaintiff excepted. The plaintiff then asked the court to charge that the burden was expressly upon the defendant to prove this fraudulent intent upon Hughes' part, "and,

even if they find it on the part of Hughes, they must find it on both in addition." The court replied: "I charge the first part, because the burden is on the defendant of proving this fraudulent intent on the part of Hughes. The other I decline to charge, except as I have already charged." I think this charge of the court was erroneous, and that the plaintiff was entitled to have the request charged in its entirety. There was, undoubtedly, a valid consideration for this transfer. The plaintiff was liable as indorser upon a note or notes which he had indorsed for the benefit of Hughes, and which had been discounted, and the proceeds used by Hughes in his business. It is true that the liability upon these notes was contingent upon Hughes failing to pay, but, before they became due, and when Hughes was evidently unable to pay them, he gave this transfer to the plaintiff as a discharge of the obligation which he was under to pay the notes, and plaintiff accepted this transfer of these goods in payment of this obligation of Hughes, and subsequently actually paid the notes. Assuming that Hughes' intention was fraudulent, it was not sufficient to avoid the transfer, unless this intention was shared by the plaintiff, or at least he had knowledge of the intent with which Hughes executed the transfer. It is not enough that there should be suspicious circumstances, or that such circumstances should exist as would put a man of ordinary prudence upon inquiry. This is settled by the case of Parker v. Conner, 93 N. Y. 123. In that case the court, at the request of the plaintiff, charged the jury that:

"It was not enough to prove that Halloran, the vendor, intended to defraud his creditors, but that Parker, the plaintiff, must also have partaken of the fraudulent intent, and the court added that the question of fact for the jury to pass upon was whether or not, under the evidence in the case, if Halloran intended to defraud, Parker partook of that intent, 'or did he have notice of facts in the case which would awaken the suspicion of a man of ordinary intelligence and caution, and which, if acted upon by him, and investigated by him, would have enabled him to have known that Halloran had a fraudulent intent. In that case Mr. Parker would be infected with Mr. Halloran's fraudulent intent.' "

The court of appeals said:

"These exceptions bring up squarely the question whether the doctrine of constructive notice is applicable to cases of this description, or whether, in order to render a sale for a valuable consideration invalid as against the creditors of the vendor, it is necessary that the vendee should have actual knowledge or belief, or at least actual suspicion, that the sale is being made with intent on the part of the vendor to hinder or defraud his creditors."

And the court held that this charge was erroneous, and that this doctrine of constructive notice was not applicable to a case of this character; saying further:

"In such a case there is no duty of active vigilance cast upon the purchaser, for the benefit of creditors of the vendor, which should require him to suspect and investigate the motives of the vendor. If he knows or believes them to be fraudulent, he has no right to aid the vendor in his fraudulent scheme, and by so doing he makes himself a party to the fraud. But fraud should not be imputed by the application of the strict rules of constructive notice in such a case, and actual good faith should be sufficient to protect the purchaser."

See, also, Jacobs v. Morrison, 136 N. Y. 105, 32 N. E. 553, where it is said:

"As well under the statute as at common law, circumstances to put the purchaser on inquiry, who paid full value, are insufficient to affect the title, unless they are equivalent to a notice of a fraudulent intent."

In Anderson v. Blood, 152 N. Y. 292, 46 N. E. 495, it is said:

"In the absence of actual notice of fraud, it is necessary that the facts and circumstances relied upon to charge him with knowledge of the fraud should be of a character equivalent to notice."

In this case, assuming plaintiff's story was true, the plaintiff was liable upon these notes of Hughes, which it was quite apparent at the time the transfer was made Hughes was unable to pay, and had no intention of paying. To protect him against that obligation, and in payment of that obligation of Hughes to the plaintiff to pay these notes, Hughes made this transfer to the plaintiff, and the transfer of this property was accepted by the plaintiff as a discharge of that obligation. This imposed upon the plaintiff the obligation to pay these notes, and would prevent the plaintiff from holding Hughes liable upon the notes after the plaintiff had paid them. There is nothing fraudulent in the plaintiff's accepting the transfer of this property upon this consideration; and, unless it was made with an actual intent to hinder, delay, and defraud creditors, it was valid as against the attaching creditors. It was not a fraud upon other creditors for the plaintiff to protect himself, and secure himself against the liability upon these notes; and the defendants, to avoid the transfer, were bound to prove, not only that Hughes had some intention of defrauding his creditors, but that that intention was either known to or believed in by the plaintiff; and, if the plaintiff had no knowledge of such an intention on behalf of Hughes, but acted in good faith, and assumed that Hughes acted in good faith in making the transfer, the mere fact that there were facts and circumstances which the jury would consider should put a man of ordinary prudence upon inquiry would not impeach the transfer. The question submitted to the jury, therefore, was not the actual intent of the plaintiff, nor his knowledge of Hughes' intent, but whether or not there were facts surrounding the transaction which, in the opinion of the jury, should have put the plaintiff upon inquiry. As before stated, that is not the test.

There is another exception which I also think well taken. The defendants' counsel asked the court to charge the jury "that the indorsement of a promissory note not yet due does not constitute an antecedent debt." To that request the court replied, "It does not, gentlemen, unless there was a promise to meet it in some way." To that the plaintiff excepted. The court then remarked, "If he undertook to meet it, that is a different thing;" to which the defendants' counsel replied: "He undertook to meet it by the contract of indorsement, but I mean that is not in itself an antecedent debt. I would like the jury to be instructed that the indorsement on a note not yet due is not an antecedent debt." To that the court replied, "I do," and to that the plaintiff's counsel excepted. I think that, in view of the charge of the court, this was error. Under this instruction the jury would have been justified in finding for the defendants, even if they found that there was an actual bona fide indorsement of these notes by the plaintiff for the accommodation of Hughes upon which the plaintiff was

liable, and that in consideration of that liability, and upon the plaintiff's assuming the obligation to pay the notes, this transfer was made. From what the court said the jury could only infer that the court had intended to instruct them that this obligation to pay these notes when due, if Hughes did not pay them, was not of itself a sufficient consideration for the transfer. That, I think, was error.

We think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.