In the Matter of the Application of PERRIN P. HUNTER, Respondent, for a Peremptory Mandamus Order against PETER S. SEERY, Sheriff of Kings County, and Another, Defendants, Impleaded with MILTON EICHOLD, Intervenor, Appellant.

Second Department, June 22, 1923.

**Judgments — real property of non-resident was attached and later sold under execution — amount realized on sale did not satisfy judgment — subsequent grantee of former owner redeemed from purchaser who was judgment creditor by assignment — redemption restored lien of judgment — land may be sold again to satisfy judgment — lien of attachment was not destroyed by execution.**

Where land of a non-resident is attached and later sold on execution issued under a judgment recovered against him, for a sum that did not satisfy the judgment, the redemption by a subsequent grantee of the owner from the purchaser on the execution sale who was the judgment creditor by assignment restores the lien of the judgment and the land may be sold again to satisfy the judgment.

The lien of an attachment on real property, notice of which is filed in the county clerk's office and recorded and indexed as a notice of *lis pendens*, is not destroyed by the execution issued on the judgment, and where the land is redeemed from the sale the lien of the attachment is restored.

APPEAL by Milton Eichold, intervenor, from that part of a peremptory mandamus order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 5th day of March, 1923, directing the sheriff of the county of Kings to receive an execution issued upon a judgment and to levy upon and sell certain real property.

*Avel B. Silverman,* for the appellant.

*Merle I. St. John,* for the petitioner, respondent.

KELLY, P. J.:

The intervenor, Milton Eichold, appeals herein from an order of the Supreme Court, at Special Term, granting the petition of Perrin P. Hunter for an order of peremptory mandamus directing the respondents Peter S. Seery and John Drescher, or either of them, in pursuance of their office as sheriff of Kings county and late sheriff of Kings county, to receive execution under a certain judgment and to make sale of real property to be levied thereunder.

In 1920 an action on contract was brought by Lee R. Jenny as plaintiff against Jacob D. Bloch as defendant. The said Jacob D. Bloch was then a resident of the State of Alabama, and service was made under the Code by publication and without the State upon the defendant. A warrant of attachment was issued to the former sheriff of Kings county, John Drescher, in July, 1920, under which three lots in the borough of Brooklyn, city of New York, owned by Jacob D. Bloch, were levied upon. No answer or general appearance having been filed, judgment by default was entered against Jacob D. Bloch on the 11th day of November, 1920, in the sum of $2,386.39. Thereupon execution was issued to the former sheriff and the property thereafter sold on February 24, 1921, to Perrin P. Hunter, the petitioner herein. After the application of the purchase price to the various expenses and fees, the sum of $14.75 was applied in the reduction of the judgment. Said judgment was assigned to Perrin P. Hunter, the petitioner, respondent, on April 19, 1921.

Jacob D. Bloch, the defendant in the action, conveyed the property to Monroe D. Bloch, the deed reciting a consideration of $250 for such sale. Thereafter Monroe D. Bloch transferred and conveyed the said property, together with certain other premises owned by Monroe D. Bloch, to the intervenor herein, the deed reciting a consideration of $500. The dates of these conveyances from Jacob Bloch, the judgment debtor, to Monroe Bloch, and from Monroe Bloch to the intervenor, appellant, are not given.

Sheriff Drescher's term of office expired December 31, 1921, and he was succeeded by the present sheriff, Peter S. Seery, on January 1, 1922. Pursuant to the statute, Milton Eichold, in the month of February, 1922, duly redeemed the said property from the present sheriff of Kings county, obtained a certificate of redemption, and is now the owner of the property referred to in the petition.

But there was still a balance due on the original judgment of

· $2,371.64 with interest.   On August 8, 1922, the petitioner, respondent, caused a new execution for such balance due to be issued to the present sheriff under the judgment against the property originally attached and redeemed as aforesaid.   The present sheriff refused to receive it or to act thereunder.   On January 26, 1923, the petitioner issued an execution to the former sheriff and he also refused to receive it or to act thereunder.

Thereupon the petitioner applied for a peremptory mandamus order, which application resulted in the order appealed from, which directs the present sheriff to receive the execution and make levy and sale thereunder of the property described in the petition, which is the property originally attached.

The petitioner, respondent, cites the provisions of the Civil Practice Act (Art. 43, § 724 *et seq.*, which are in " Executions against Property ") relating to redeeming real property which has been sold under execution.   These provisions are practically a re-enactment of the sections of the former Code of Civil Procedure relating to the same subject (Code Civ. Proc. § 1446 *et seq.*), and were derived from the Revised Statutes (Pt. 3, chap. 6, tit. 5, art. 2 [2 R. S. 370 *et seq.*], § 45 *et seq.*) and from other statutes not here material.   These provisions for redemption of real property appear to date back to section 1 *et seq.* of chapter 184 of the Laws of 1820, and the language of the original enactment of 1820, so far as it describes the right to redeem, the persons who may redeem and the effect of redemption, appears to have been carried down to the present Civil Practice Act without substantial change.

The effect of these provisions was to provide a period of fifteen months from the date of sale under execution during which redemption might be made and during which the sheriff could not deliver a deed of the real estate sold.   (Civ. Prac. Act, § 748; Code Civ. Proc. § 1471, as amd. by Laws of 1886, chap. 637; 2 R. S. 373, § 62; derived from Laws of 1820, chap. 184, § 4).   So far as they affect the question now presented, we have the Civil Practice Act (§§ 724, 725, 726; formerly Code Civ. Proc. § 1446–1448; derived from 2 R. S. 370, §§ 45, 46; Id. 371, § 49, and Laws of 1820, chap. 184, § 2):

" § 724.   Time and manner of redeeming real property.   Within one year after the sale of real property by virtue of an execution, a person, specified in the next section, may redeem such real property by paying to the purchaser, his executor, administrator or assignee, or to the sheriff who made the sale, for the use of the person so entitled thereto, the sum of money which was paid upon the sale with interest from the time of the sale at the rate of ten per centum per annum.

" § 725.   By whom redemption may be made.   The redemption,

specified in the last section, may be made either by the judgment. debtor whose right and title were sold or by his heir, devisee or grantee, who has acquired by inheritance, devise, deed, sale, by virtue of a mortgage or of an execution, or by any other means, an absolute title to the property proposed to be redeemed, or, in a case specified in section seven hundred and thirty-six or seven hundred and thirty-seven of this act, to a portion thereof.

" § 726. Effect of redemption upon sale. Upon payment being made by a person entitled to redeem real property, as prescribed in the last two sections, the sale of the property redeemed, and the certificates of the sale, as far as they relate thereto, become null and void."

The origin of sales of real estate under execution is discussed by Chancellor Kent in his Commentaries (Vol. 4 [14th ed.], p. *429 *et seq.*). The remedy given to the judgment creditor by the English law was a sequestration of the profits of the land, or the possession of a moiety of the lands and in certain cases of the whole of it. In all these cases the creditor held the land in trust until the debt was discharged by the receipt of rents and profits. This limited remedy against the real estate of the debtor was not deemed sufficient security to British creditors, in its application to the American colonies, and the statute of 5 George II, chapter 7, was passed, in the year 1732, for their relief. It made lands, hereditaments and real estate, within the English colonies, chargeable with debts, and subject to the like process of execution as personal estate. Lands were dealt with on execution precisely as personal property. Judge Kent notes that in Massachusetts as early as 1696 and in Pennsylvania as early as 1700 and 1705, and before the statute of George II above referred to, lands were rendered liable to sale on execution for debt.† The practice of selling real estate under certain checks and modifications, created to prevent abuse and hardship, has continued and become permanently established. Originally the rule in New York was to sell the real estate absolutely at auction, upon due notice and without right of redemption. " But," says Judge Kent (p. *431), " sales of land on execution had been attended with so much oppressive speculation upon the necessities of the debtor, that the Legislature of New York, a few years past, provided some powerful but not unreasonable checks upon the peremptory and sweeping desolation of an execution at law," and he cites the provisions for redemption given to the debtor or his representative within one year on paying the amount of the bid with ten per cent interest, and the further period of three months given to

---

† See Acts of Prov. Mass. Bay (1696), chap. 5; Acts of Prov. Penn. (1700), chap. 48; Id., (1705), chap. 138,— [REP.

creditors in case the debtor fails to redeem, and continues (p. *432):
" But all these subsequent redemptions must be within the fifteen
months from the time of the sale; for the officer is then to execute
a deed to the person entitled, and the title so acquired becomes
absolute in law. The deed, when executed, will be good by relation,
and cover the intervening period from the sale."

But granting the right to redeem from the sale under the
execution in the judgment debtor or his grantee, what was the
effect of the redemption on the right of the judgment creditor?
His judgment against Bloch was for $2,386.39; the sale of the
lands attached netted but $14.75. The intervenor, Eichold, grantee
of the judgment debtor, within the statutory time redeemed the
property from the sale made under execution by paying the amount
bid at the same time with ten per cent interest. The statute says
(Civ. Prac. Act, § 726), " the sale of the property redeemed, and
the certificates of the sale, as far as they relate thereto, become
null and void." The sheriff's certificate of sale held by the pur-
chaser " was no more than a specific lien, entitling the holder to
the amount of the bid and ten per cent interest, which being paid
and satisfied, the certificate became extinct. A redemption by
the debtor renders a sheriff's sale null and void, as though it had
never taken place. The very judgment on which the sale was
had becomes again a lien, if it was not fully satisfied by the bid,
and the land may be again sold." (*Bodine* v. *Moore*, 18 N. Y.
347, 351.) This decision of the Court of Appeals in 1858 appears
to state the law as it is to-day. Mr. Justice GIEGERICH had the
same question before him at Special Term, New York county,
in 1917 (*Thompson* v. *Thompson*, 98 Misc. Rep. 310). He said:
" The statute governing the subject is section 1448 of the Code
of Civil Procedure, which is as follows: Section 1448. ' Upon
payment being made by a person entitled to redeem real property,
as prescribed in the last two sections, the sale of the property
redeemed, and the certificates of the sale, as far as they relate
thereto, become null and void.' As far back as *Titus* v. *Lewis*,
3 Barb. 70, after calling attention to the language of the statute
which at that time (being then 2 R. S. 371, § 49) was substantially
the same as the present Code section above quoted, the court
pointed out that by the very terms of the enactment the redemption
under the first sale rendered that sale null and void, and by necessary
consequence, there being no sale in law, there was no extinguishment
of the judgment lien upon the premises, and that the judgment
was merely paid and satisfied *pro tanto*, remaining a valid lien for
the unpaid balance. Still earlier, in *Wood* v. *Colvin*, 5 Hill, 228,
the court had placed the same construction upon the statute. No

Second Department, June, 1923. [Vol. 206

case in point since the two just cited has been called to my attention, nor have I been able to find any, except *Bodine* v. *Moore*, 18 N. Y. 347, in which the court, at page 351, said: ' A redemption by the debtor renders a sheriff's sale null and void, as though it had never taken place. The very judgment on which the sale was had becomes again a lien, if it was not fully satisfied by the bid, and the land may be again sold.' An attempt is made to distinguish the foregoing authorities from the present case by pointing out certain differences in the facts, but none of those differences are of any significance, in my judgment, in view of the language of the statute and the decisions which hold that the redemption wipes out the former sale and leaves the situation, so far as a lien of the judgment is concerned, as though no sale had ever been made, the only surviving effect of the first sale being such reduction in the amount of the judgment as may have resulted. A distinction is also attempted to be based upon the fact that in the present case an attachment was procured prior to the judgment, and that the first sale was of the debtor's interest on the date of the attachment, and the second sale was of his interest at the date of the judgment, but inasmuch as no interests had intervened between the two dates, and as the debtor's rights in the property in question were the same on the one date as on the other, I cannot see that the fact of the attachment is of any significance."

In *Titus* v. *Lewis*, cited by Mr. Justice GIEGERICH (*supra*), the General Term in the fifth judicial district held in 1848: " It is a general rule that a sale of lands, under a judgment, destroys the lien of the judgment on the lands. But where, after the sale of premises upon an execution, for less than the sum due upon the judgment, the same are redeemed by the grantee of the judgment debtor, they may be resold by the sheriff, upon the same execution, for the balance remaining due thereon. In such a case, a redemption under the first sale renders that sale null and void; and by such redemption the judgment is merely paid and satisfied *pro tanto*, but remains a valid lien upon the premises, for the unpaid balance." The court said: " The general proposition that a sale of lands under a judgment destroys the lien of the judgment on those lands, is not to be disputed. (*Hewson* v. *Deygert*, 8 John. Rep. 333. *Ex parte Stevens*, 4 Cowen, 133.) It was however competent for the Legislature to alter this rule; and they have done so in relation to a certain class of cases, to which the one now under consideration belongs. The 45th section of title 5th, chapter 6, part 3 of the Revised Statutes (2 R. S. 370), gives a right of redemption of lands sold on execution, within one year from the sale, on the payment of the amount bid, with ten per

cent interest thereon.    The 46th section declares that such redemption may be made (1) by the judgment debtor whose lands were sold; (2) in case of his death, by his devisee or heir; (3) by his grantee who shall have acquired an absolute title to the lands by deed.    Then comes the 49th section, which provides as follows: ' Upon such payment being made, by any person so entitled to redeem any real estate so sold, the sale of the premises so redeemed, and the certificates of such sale, shall be null and void.'    In this case, therefore, by the very terms of this enactment, the redemption under the first sale rendered that sale null and void, and, by necessary consequence, there having been no sale in law there was no extinguishment of the judgment lien upon the premises.    The judgment was merely paid and satisfied *pro tanto;* but remained a valid lien for the unpaid balance.    Such was the construction given to the act, by the court, in *Wood* v. *Colvin* (5 Hill, 228) which we regard as a direct authority for the plaintiff in this case.    It is true, the lands were redeemed in that case by the judgment debtor; and in this, by his grantee.    That circumstance, however, makes no difference; for the statute makes the sale void, as to the grantee, precisely as it does against the debtor himself.''

There seems to be reason in this rule thus laid down.    The judgment creditor had a valid lien on Mr. Bloch's land for $2,386.39. It was sold under execution and bought in by Hunter, who was in law and fact the judgment creditor under assignment of the judgment.    If the sale had been consummated and the sheriff's deed delivered, the lien of the judgment on this particular property would have been gone.    Where, however, the judgment debtor, or the person to whom he has sold the property during the redemption period, sees fit to redeem and thus destroy the effect of the sale and the certificate held by the purchaser, it would appear just and right that the judgment, which had been in a state of suspension during the redemption period, should be reinstated.    It was a lien on the land when the execution was issued, the net proceeds of sale amounted to but $14.75 and the grantee of the judgment debtor avails himself of the privilege to redeem, as the original judgment debtor might have done.    In this way he gets rid of the sale on execution, but he does not pay the debt by paying the sheriff the amount of the bid with ten per cent interest, in this case netting $14.75 to the creditor on a $2,386 judgment.

The intervenor, appellant, appears to concede the force of the decisions in *Thompson* v. *Thompson* and *Bodine* v. *Moore* (*supra*), but seems to think that the law in *Bodine* v. *Moore* is too old to be of force in this age of progress.    He says, " that to enforce literally the contention of the petitioner, respondent, respecting the law

cited in those cases would be both illogical and render ineffectual the provisions of the Civil Practice Act." He says that the grantee of the judgment debtor is given the right to redeem and that it is not " logical " to give him the right to redeem and then to immediately subject the property, for which he has paid the judgment debtor (in the consideration for the deed) and the purchaser at the sale (in the amount paid to redeem) to a resale. He supposes a case where a parcel of real estate has been sold under execution *at* its actual value, and a grantee of the judgment debtor for valuable consideration redeems it paying the *actual value*, and he says it would be manifestly unfair to again subject that particular property to a resale. He says that the purchase price should be assumed to take the place of the property.

The case suggested is not the case presented on this record although there is nothing before us to show the real value of the lots sold. Nor is the amount bid at the sheriff's sale stated. All we know is that the sale netted fourteen dollars and seventy-five cents. The three lots described in the petition, located in the borough of Brooklyn, city of New York, are obviously worth a substantial sum. The appellant says in his affidavit that after the sheriff's sale and of course after the entry of the original judgment, the judgment debtor conveyed the lots by a deed " reciting a consideration of $250 " to someone of the same name, Bloch, and that afterwards Mr. Eichold, the intervenor, purchased the lots by a deed which " recites a consideration of $500."

Whether the procedure for redemption is " logical " or not, I do not know. The question before the court is whether the lien of the judgment was extinguished entirely by reason of the sheriff's sale. Under the words of the statute and under the decisions cited, I do not think it was so lost.

The appellant also makes the point that as this action was commenced by attachment and service without the State, the lien of the attachment was " merged into the execution," and he says that the execution " having been fully complied with by the sale of the only property upon which a levy can be made under such execution, the lien no longer exists."

I think the sale under execution resulted in the acquisition by the purchaser of " a specific lien evidenced by the sheriff's certificate " and no more. (*Bodine* v. *Moore, supra.*) During the fifteen months ensuing the rights of the judgment creditor under the attachment which he claims was " merged into the execution " were suspended. Upon redemption the judgment was restored as a lien, subject to deduction in the amount received from the sale, and with all its former force. The respondent cites the provisions

of the Civil Practice Act concerning judgments entered after attachment (Civ. Prac. Act, §§ 520, 940, 969), and the section containing definitions (Id. § 7, subd. 4), " A warrant of attachment against property is said to be ' annulled ' when the action in which it was granted abates or is discontinued; or a final judgment rendered therein in favor of the plaintiff is fully paid; or a final judgment is rendered therein in favor of the defendant. But in the case last specified a stay of proceedings suspends the effect of the annulment, and the reversal or vacating of the judgment revives the warrant," and petitioner, respondent, says with some reason, " We thus see that an attachment is never annulled so long as a judgment in favor of the plaintiff remains in force. It still lives in the greater lien of the judgment."

I am inclined to agree with the petitioner that whatever right the judgment creditor had under the judgment prior to the issuance of the original execution, was restored to him when the property was redeemed from the sale and the certificate of sale became " null and void," subject of course to a credit of any amount received under the execution.

The respondent insists that where an attachment is levied upon real property the lien is acquired by filing the notice required by the Civil Practice Act (§ 917; former Code Civ. Proc. § 649) in the county clerk's office where it is to be recorded and indexed by the clerk " in the same book, in like manner and with like effect as a notice of the pendency of an action." As to attachment of chattels as in the case of *Peetsch* v. *Sommers* (31 App. Div. 255), cited by appellant, the attachment lien is acquired by the sheriff actually taking possession of the personal property and it continues until he makes levy under execution. It is in such cases that the attachment may be said to merge in the execution. The lien of an attachment on real property, notice of which is filed in the county clerk's office and recorded and indexed as a notice of *lis pendens*, is not destroyed by the execution. If a judgment debtor or his grantee sees fit to redeem from the execution sale, all parties are placed in their original position. Whether the order should run to the present sheriff rather than to the late sheriff who levied the attachment (Civ. Prac. Act, § 968; Code Civ. Proc. § 706) is not before us upon this appeal. The sheriff does not appeal and the appellant does not raise the point.

The peremptory mandamus order should be affirmed, with costs.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and KELBY, JJ.

Peremptory mandamus order unanimously affirmed, with costs.