### In re MTC ELECTRONIC TECHNOLOGIES SHAREHOLDER LITIGATION.

**This Document Relates To: All Actions.**

**No. CV 93 876 JG.**

United States District Court, E.D. New York.

Jan. 21, 1997.

Patricia M. Hynes, Paul D. Young, Sanford P. Dumain, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Jeffrey H. Squire, Kaufman, Malchman, Kirby & Squire, New York City, for Plaintiffs.

Thomas I. Sheridan III, Marshall Sklar, Haythe & Curley, New York City, Alexander F. Wiles, Jeffrey C. Hallam, Irell & Manella, Los Angeles, CA, for defendant MTC Electronic Tech. Co., Ltd.

James M. Ringer, Lori Martin, Rogers & Wells, New York City, Gary P. Naftalis, Alan P. Friedman, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for defendant Daiwa Securities America, Inc.

Edward F. Westfield, Edward F. Westfield, P.C., Riverdale, NY, for Defendant H.J. Meyers & Co., Inc.

Bruce S. Kaplan, Philippe Adler, Friedman & Kaplan, New York City, for Individual Defendants.

Gregory A. Markel, Duker, Barrett, Gravante & Markel, LLP, New York City, for Defendant BDO Dunwoody Ward Mallette.

Richard C. Raymond, McMillan, Constabile, Maker, Murphy & Raymond, Larchmont, NY, for Defendant Alan Leung.

Johnathan D. Warner, Warner & Joselson, New York City, for Defendant Miko and Sit Wa Leung.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

Plaintiffs have brought this class action against MTC Electronic Technologies Co., Ltd. ("MTC"), and various others, including H.J. Meyers & Co. ("H.J. Meyers"), the lead underwriters for an MTC stock offering in 1991. Plaintiffs accuse these defendants of violating Section 10(b) of the Securities Exchange Act of 1934 (the "Act") (15 U.S.C. § 78j) and Rule 10b–5 (17 C.F.R. § 240.10b–5) promulgated thereunder.

On September 7, 1995, I issued a memorandum and order, reported at 898 F.Supp. 974, which resolved numerous motions to dismiss. That decision granted H.J. Meyers' motion to dismiss the § 10(b) claim against it to the extent the claim is based on its preparation or drafting of MTC's November 1991 prospectus. Specifically, I concluded that under *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." 898 F.Supp. at 987. The decision goes on to state:

> Plaintiffs have alleged that H.J. Meyers participated in drafting and circulating the prospectus for MTC's November 1991 public offering. There is no allegation that H.J. Meyers made any of the allegedly fraudulent representations in that prospectus. Indeed, there is no allegation that it did anything that is not done by lead underwriters with respect to all such public offerings. Again, I conclude that this is precisely the sort of role in an alleged 10(b) violation that, according to Central Bank, is no longer actionable. Accordingly, to the extent that Count One seeks to impose liability on H.J. Meyers based on its role in preparing and disseminating the November 1991 prospectus, it is hereby dismissed.

898 F.Supp. at 987.[1]

Plaintiffs now seek reconsideration of this aspect of the decision. They base their application on three arguments. First, plaintiffs contend that, in light of the central role underwriters play in the issuance of securities and the special reliance placed on them by prospective investors, they are simply not secondary actors with respect to statements in a registration statement or prospectus. Second, citing *Elkind v. Liggett & Myers*, 635 F.2d 156, 163 (2d Cir.1980), they argue that H.J. Meyers was "sufficiently entangled" in the preparation of the 1991 prospectus that it may be held primarily liable for statements therein even if it did not "make" them. Third, plaintiffs contend that my deci-

---

1. Plaintiffs also allege that false statements in the prospectus were repeated in H.J. Meyers' May 29, 1992 research report. I concluded that although H.J. Meyers could not be held liable for misstatements in the prospectus, it could be held liable for misstatements in its research report. 898 F.Supp. at 987.

sion absolving H.J. Meyers of responsibility for false statements in the 1991 prospectus improperly ignored two of the three subsections of Rule 10b–5. That Rule prohibits the employment of "any device, scheme or artifice to defraud" (subsection (a)) and any "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" (subsection (c)). Plaintiffs claim that even if H.J. Meyers may not be held primarily liable for misstatements in the 1991 prospectus under subsection (b), which prohibits false statements and material omissions, it nevertheless faces liability "as a result of its participation in a fraudulent scheme or course of conduct." Plaintiffs' Memorandum In Support Of Their Motion For Reargument, at 15.

I am persuaded by the first of these arguments.[2] In *Chris–Craft Industries, Inc. v. Piper Aircraft, Corp.*, 480 F.2d 341 (2d Cir.) *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), the court determined the scope of liability for "making" false statements prohibited by Section 14(e) of the Act.[3] The court stated:

Section 14(e) provides that "[i]t shall be unlawful for any person to make any untrue statement of a material fact" or to mislead by omitting "to state any material fact". (emphasis added). An underwriter or dealer-manager for a securities issue does not actually prepare the registration materials. Thus, in a literal sense, it does not "make" statements to potential investors.

But we do not read § 14(e) so narrowly. An underwriter by participating in an offering constructively represents that statements made in the registration materials are complete and accurate. The investing public properly relies upon the underwriter to check the accuracy of the statements and the soundness of the offer; when the underwriter does not speak out, the investor reasonably assumes that there are no undisclosed material deficiencies. The representations in the registration statement are those of the underwriter as much as they are those of the issuer.

480 F.2d at 370.

The court's reasoning applies to Section 10b–5 as well.[4] Although the holding of *Chris–Craft* was that the underwriter was liable as an aider and abettor under § 14(e), there was no reason for the court to distinguish between primary and secondary liability. However, I am persuaded that the court's reasoning—that the underwriter's role in a public offering is such that the representations in a registration statement or prospectus are its own—supports primary liability.

My earlier decision mistakenly equates the role of underwriters in public offerings with that of other, secondary professionals. While I remain convinced that those other participants must literally "make" the allegedly false statements in order to be liable under Rule 10b–5(b),[5] I conclude on reconsideration that the statements in the 1991 prospectus must be deemed to be those of H.J.

2. Accordingly, I do not address the other two.

3. Section 14(e) of the Act, 15 U.S.C. § 78n(e), provides:

"It shall be unlawful for any person to make any untrue statement of a material fact … or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

4. *See* 480 F.2d at 362 ("the underlying proscription of § 14(e) is virtually identical to that of Rule 10b–5; the critical difference is that the latter is applicable only 'in connection with the purchase or sale of any security', while the former is applicable 'in connection with any tender offer …' ").

5. The conflicting approaches to the scope of liability under Section 10(b) after *Central Bank*, alluded to in my initial decision, 898 F.Supp. at 986–87, have continued. *See, e.g., Anixter v. Home–Stake Production, Co.*, 77 F.3d 1215 (10th Cir.1996) (accountant's assistance in preparing prospectus could not give rise to primary liability); *In re JWP Inc. Securities Litigation*, 928 F.Supp. 1239, 1256 (S.D.N.Y.1996) (agreeing with *Anixter* and citing *MTC* with approval); *In re Valence Technology Securities Litigation*, No. 95–CV–20459, 1996 WESTLAW 37788 (N.D.Cal. Jan.23, 1996), at *11 (finding *MTC* persuasive); *In re ICN/Viratek Securities Litigation*, No. 87–CV–4296, 1996 WESTLAW 164732 (S.D.N.Y. 1996) at *5 (disagreeing with *MTC*); *Phillips v. Kidder Peabody & Co.*, 933 F.Supp. 303, 315 (S.D.N.Y.1996) ("[t]he circuit and district courts are split in their approach to determining when to impose primary liability on professionals").

Meyers as much as they are those of MTC. Accordingly, the motion for reconsideration is granted. The portion of my September 7, 1995, decision that granted in part H.J. Meyers' motion to dismiss is hereby vacated, and that motion to dismiss is denied in its entirety.

So Ordered.