■ VANSHIP HOLDINGS LIMITED, Respondent, v ENERGY INFRASTRUCTURE ACQUISITION CORP., Appellant, et al., Respondent. [884 NYS2d 24]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered December 2, 2008, which, to the extent appealed from as limited by the briefs, enjoined respondents from distributing $2.6 million of the funds in an account held by Continental Stock Transfer and Trust Company as trustee for Energy Infrastructure Acquisition Corp. (EIAC), unanimously reversed, on the law, without costs, and the injunction vacated.

Petitioner Vanship Holdings Limited (Vanship) entered into a "Share Purchase Agreement" (the SPA) with respondent Energy Infrastructure Acquisition Corp. (EIAC) and nonparty Energy Infrastructure Merger Corp. (Merger Corp.). The SPA provided for EIAC to purchase nine large crude oil carriers from Vanship.

EIAC is a special purpose acquisition company, a shell entity whose raison d'être is to acquire another company. Before EIAC had identified a target, it held an initial public offering (IPO) which raised $209.25 million. Pursuant to a representation made in the IPO prospectus, the funds were placed in a trust account (the Trust). The prospectus provided that the funds would remain in the Trust until the earlier of an acquisition being completed or two years from the date of the IPO. If no acquisition was consummated, the funds would be returned to the investors, less any debts owed by the entity to third parties. The trustee of the Trust was respondent Continental Stock Transfer and Trust Company.

The parties terminated the SPA by mutual agreement. Shortly thereafter, Vanship submitted a series of invoices to EIAC totaling approximately $3.4 million. These amounts represented costs incurred by Vanship during the negotiation of the SPA. Vanship's claim for reimbursement was based on section 21 (i) of the SPA, which provided, in pertinent part: *"Expenses. Each party shall be responsible for its own expenses in connection with the preparation, negotiation, execution, delivery and per-*

formance of this Agreement, provided that the costs of preparing the Audited Financial Statements and the Interim Financial Statements and the costs of [Vanship]'s counsel (including securities and general counsel) and reasonable and documented 'road show' expenses of [Vanship]'s representatives incurred up to and including the Closing Date or earlier termination shall be borne initially by [Vanship] and, together with any costs of counsel to EIAC, [Merger Corp.] or the lending parties, and commitment fees and other expenses arising in connection with the Financing or its termination and paid at any time (after consultation with EIAC) by [Vanship] on behalf of EIAC, [Merger Corp.] or any of the SPVs, shall be reimbursed by [Merger Corp.] and/or EIAC to [Vanship] upon (as the case may require) the earlier of termination of this Agreement pursuant to Section 20 and the Closing, and the cost of any other audited or interim financial statements requested by SEC shall be borne by EIAC."

For reasons that are not germane here, EIAC refused to pay the invoice. Vanship filed for arbitration pursuant to an arbitration clause contained in the SPA. EIAC and Merger Corp. filed their own arbitration claim against Vanship, alleging, among other things, that Vanship breached the SPA and engaged in fraud. Vanship then commenced this special proceeding, pursuant to CPLR 7502 (c) and 6301, for a preliminary injunction in aid of arbitration.

Specifically, Vanship asked the court to enjoin the release of the Trust funds to the shareholders and to order EIAC to place $6 million of the Trust funds in escrow to ensure that its claim would be paid in full. In making these requests, Vanship relied in part on section 16 (d) of the SPA. Pursuant to that section, Vanship waived any claims against the Trust "which it may have in the future as a result of, or arising out of, any negotiations, contracts or agreements with EIAC." However, section 16 (d) contained an exception for "any expenses which EIAC and/or [Merger Corp.] has agreed to pay under the terms of this Agreement on the earlier of the termination of this Agreement under Section 20 and the Closing Date." Vanship asserted that the "expenses" referred to in section 16 (d) included those covered by section 21 (i). It further claimed as "expenses" covered by section 16 (d) arbitration costs provided in section 21 (c) of the SPA. That section, the arbitration clause, stated, in pertinent part, that "[t]he arbitration award shall include attorneys' fees and costs to the prevailing party." The arbitration clause applied to "[a]ny controversy or claim arising out of or in conjunction with [the SPA]."

In opposing the motion, EIAC argued that Vanship was a stranger to the relationship between EIAC and its investors, and had no standing to prevent EIAC from directing that the Trust be disbursed to the investors. It further asserted that Vanship was unlikely to prevail in the arbitration because it had acted in bad faith in its dealings with EIAC. Finally, EIAC stated that it had placed its shareholders on notice that they could be held liable for claims against EIAC. Accordingly, it maintained that Vanship would not be frustrated because EIAC was a shell.

EIAC's counsel repeated these contentions at the oral argument of Vanship's motion. Counsel further maintained that, if the court was inclined to restrain the Trust, it should, at the very least, limit the amount restrained to Vanship's claimed deal costs of $3.4 million, and not include the anticipated costs of arbitration. The court granted Vanship's application in its entirety, noting that its decision turned primarily on the fact that it perceived no prejudice to EIAC if the Trust was restrained pending arbitration.

On appeal, EIAC abandons the argument it made below that Vanship had no standing to make a claim against the Trust. Instead, it asserts that the plain language of section 16 (d) of the SPA limits any claim by Vanship against the Trust to expenses that EIAC "agreed to pay under the terms of this Agreement on the earlier of the termination of this Agreement under Section 20 and the Closing Date." EIAC argues that, since section 21 (i) of the SPA provided which "expenses" EIAC would pay, and did not expressly mention costs incurred in recovering those expenses, section 16 (d) precludes Vanship from recovering from the Trust any attorneys' fees that might be awarded as a result of the arbitration.

Vanship contends that, because EIAC did not make the foregoing argument below, it is not permitted to make it here. We disagree. Although ordinarily arguments not raised in the trial court may not be asserted on appeal, that is not the case where "a party does not allege new facts but, rather, raises a legal argument which appeared upon the face of the record and which could not have been avoided . . . if brought to [his or her] attention at the proper juncture" (*Gerdowsky v Crain's N.Y. Bus.*, 188 AD2d 93, 97 [1993] [internal quotation marks and citations omitted]). So long as the issue is determinative and the record on appeal is sufficient to permit our review, we may consider a new legal argument raised for the first time in this Court (*see Matter of Allstate Ins. Co. v Perez*, 157 AD2d 521, 523 [1990]). Here, all of the support for EIAC's argument can be found within the four corners of the SPA, which was part of the record

below. Indeed, this appeal revolves around the strictly legal issue of how the SPA should be interpreted.

Turning to the merits, Vanship argues that the injunction was properly entered because all it had to do was establish a prima facie showing of a right to proceed against the Trust, and that it did not need to "prove" that point until it was before the arbitrators. However, the procedural question of whether Vanship may make a claim against the Trust will not be before the arbitrators. The only issue for the arbitrators is whether Vanship is entitled to recover its deal costs. Thus, Vanship was required to prove as a matter of law in *this proceeding* that it is entitled to recover its attorneys' fees from the Trust. We hold that it failed to do so.

This Court has held that, when interpreting a contract, "the intent of the parties governs. A contract should be construed so as to give full meaning and effect to all of its provisions. Words and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement" (*American Express Bank v Uniroyal, Inc.*, 164 AD2d 275, 277 [1990], *lv denied* 77 NY2d 807 [1991] [citations omitted]). We must be guided by these rules. Even Vanship does not contend that the SPA is ambiguous and that extrinsic evidence should be considered to prove the parties' intent. Instead, it argues that the SPA allows Vanship to recover its attorneys' fees from the Trust. However, section 16 (d) clearly limits the claims Vanship may make against the Trust to "expenses which EIAC and/or [Merger Corp.] has agreed to pay under the terms of this Agreement on the earlier of the termination of this Agreement under Section 20 and the Closing Date." The only "expenses" mentioned in the SPA which fit that description are the expenses covered by section 21 (i).

Vanship argues that, even though any attorneys' fees which it might be awarded by the arbitrators are not included in the description of "expenses" contained in section 21 (i), the attorneys' fees provision in section 21 (c) would be rendered illusory were this Court to find that section 16 (d) is limited to deal costs only. It claims that it would have been "nonsensical" for it to have bargained for reimbursement of its deal costs, and the fees expended seeking to recover those deal costs, but at the same time waive its right to recover those fees from the Trust. It further asserts that attorneys' fees and costs are not stand-alone claims, but are "ancillary" relief awarded when the underlying claim is successful. Accordingly, it claims that EIAC's interpretation would force it to improperly split its fee claim from the underlying claim for its deal costs.

These arguments are unavailing. The plain language of the SPA controls and it does not allow Vanship to recover from the Trust any attorneys' fees it is awarded if it prevails in the arbitration. Section 16 (d) clearly precludes any and all claims against the Trust save those for deal costs. No mention is made of attorneys' fees expended in recovering those costs. This interpretation does not render section 21 (c) illusory, because Vanship can still have a claim against EIAC for recovery of its attorneys' fees. While EIAC's sole asset may be the Trust, that did not dissuade Vanship from agreeing in section 16 (d) that it would not assert against the Trust any claim, other than one for its deal costs, that it "may have in the future as a result of, or arising out of, any negotiations, contracts or agreements with EIAC."

Nor is Vanship's argument that attorneys' fees are "ancillary" to its claim for deal costs persuasive. Even if, as Vanship argues, a particular claim and the fees incurred pursuing that claim are inseparable, it is not being forced to split the two. That is because the claim for deal costs is against EIAC. Indeed, the Trust is not even a party to the arbitration. In the arbitration against EIAC, Vanship is free to seek its deal costs and related attorneys' fees together. The only question before us is whether Vanship is entitled to an injunction restraining disbursement of the Trust on the basis that, once it has an arbitration award including attorneys' fees, it can satisfy the attorneys' fees portion of the award from the Trust. The plain language of the SPA provides that it cannot recover any such fees from the Trust. Accordingly, the injunction was improperly issued. Concur—Mazzarelli, J.P., Andrias, Nardelli, Catterson and DeGrasse, JJ.