[23 NYS3d 50]

Basis Yield Alpha Fund Master, Respondent, v Morgan Stan-
ley et al., Appellants, et al., Defendants.

First Department, December 29, 2015

## APPEARANCES OF COUNSEL

*Davis Polk & Wardwell LLP*, New York City (*James P. Rouhandeh, Paul S. Mishkin, Daniel J. Schwartz, Nicholas N. George* and *Scott A. Eisman* of counsel), for appellants.

*Scott, Douglass & McConnico, L.L.P.* (*Jane M.N. Webre* of the Texas bar, admitted pro hac vice, of counsel), and *Guzov, LLC*, New York City (*Debra J. Guzov* and *Anne W. Salisbury* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

This appeal presents the question of whether a sophisticated investor has sufficiently alleged that it justifiably relied on credit ratings of securities that defendants, the organizers of the offering, allegedly had manipulated and otherwise knew, from nonpublic information, to be inaccurate. We hold that the element of reasonable reliance has been sufficiently pleaded in support of plaintiff's fraud and fraudulent concealment causes of action, and therefore affirm the denial of defendants' motion to dismiss those claims.

The amended complaint alleges that, in 2006, defendants (collectively, Morgan Stanley) structured and marketed a col-

lateralized debt obligation (CDO) known as STACK 2006-1 (STACK). STACK involved the issuance by a special-purpose entity of $500 million of notes to be sold to investors. The payments of interest and principal due on the notes were to be funded by cash flows from assets in a collateral portfolio. The collateral chiefly comprised residential mortgage-backed securities (RMBS), which are bonds funded by cash flows from large pools of home mortgage loans. The RMBS in the collateral portfolio were represented to have an average credit rating of BBB/Baa3, the lowest non-"junk" rating, although 5% of the collateral had "junk" ratings. Most of the RMBS in the STACK collateral portfolio were backed by mortgage loans that had been made to borrowers with subprime credit. A significant portion of the RMBS in the STACK portfolio had been underwritten by Morgan Stanley.

The STACK notes were divided into eight classes, or tranches, of credit risk. The six senior tranches bore investment-grade credit ratings, ranging from Aaa/AAA (highest) to Baa2/BBB (lowest). The seventh tranche bore a "junk" rating (Ba1/BB+). These ratings were assigned by nonparty credit rating agencies Moody's and Standard & Poor's. Below the seven rated tranches was the most junior, and hence most risky, layer of the offering, an "equity" tranche of unrated subordinated notes. The subordinated notes would realize the highest rate of return in the event the RMBS in the STACK collateral portfolio performed well. In the event of substantial defaults in the portfolio, however, the subordinated notes would bear all of STACK's losses, until the holder's investment had been wiped out, before the higher tranches would suffer any loss.

Upon STACK's closing in July 2006, plaintiff Basis Yield Alpha Fund Master, an entity serving as an investment vehicle for a Cayman Islands mutual fund, purchased all of the CDO's subordinated notes for $17 million. When the housing market subsequently collapsed, STACK experienced substantial losses, and Basis Yield, as holder of the junior tranche bearing 100% of the CDO's initial losses, lost all of its investment in the subordinated notes.

In 2012, Basis Yield commenced this action against Morgan Stanley, asserting causes of action for fraud, fraudulent concealment and negligent misrepresentation. Morgan Stanley moved to dismiss the amended complaint pursuant to CPLR 3211 (a) (1), (7) and 3016 (b), arguing, as relevant to this ap-

peal, that the fraud causes of action are legally insufficient because, based on the facts alleged, Basis Yield could not have justifiably relied on the misrepresentations Morgan Stanley allegedly made in selling the subordinated notes (which we more fully discuss below). Supreme Court granted the motion only to the extent of dismissing the negligent misrepresentation claim and otherwise denied the motion, leaving in place the fraud causes of action (2013 NY Slip Op 33061[U] [Sup Ct, NY County 2013]). Upon Morgan Stanley's appeal, we affirm.[1]

In brief, as presented to us on this appeal, Basis Yield bases its fraud claims on the contention that the allegations of the amended complaint, if true, would support a finding that Morgan Stanley had special knowledge of the unreliability of the credit ratings of the senior tranches of the STACK offering, which unreliability it allegedly misrepresented or concealed in marketing the CDO to all investors, including Basis Yield. Although Basis Yield's subordinated notes were themselves unrated, Basis Yield claims to have relied, in purchasing the unrated junior tranche, on the credit ratings of the seven higher tranches—six of which had received investment-grade ratings—as indicative of the overall stability of the CDO. Further, as alleged in the amended complaint, Morgan Stanley obtained its knowledge of the unreliability of these ratings, not from information generally available in a given market (*cf. HSH Nordbank AG v UBS AG*, 95 AD3d 185 [1st Dept 2012]), but from its role in creating and marketing the relevant securities. Specifically, Morgan Stanley underwrote a significant portion of the RMBS that constituted a major part of the collateral of STACK, and allegedly knew, from the due diligence it conducted in that capacity, that many of the mortgage loans underlying the RMBS collateral did not meet the underwriting guidelines that prevailed in the industry at the time.[2] In addition, in putting together the STACK offering, Morgan Stanley allegedly prevailed upon nonparty credit ratings agencies to

---

**1.** Because Basis Yield has not appealed Supreme Court's dismissal of the negligent misrepresentation claim, that cause of action is not at issue on this appeal, and we do not further discuss it.

**2.** Although the amended complaint apparently does not allege a representation specifically concerning the underwriting standards used by the originators of the loans underlying the RMBS collateral, the soundness of the underwriting standards was implied by Morgan Stanley's alleged representations to Basis Yield that STACK's RMBS collateral would be of "investment grade" quality. Drawing all inferences in favor of the pleader, the investment-grade ratings of six of the eight tranches of notes comprising the STACK 2006-1 CDO also implied the soundness of the underwriting

use an outdated, generally disused ratings model in rating the senior tranches of STACK, unbeknownst to Basis Yield and the other investors in the CDO.

Morgan Stanley argues that, even assuming the truth of the allegations of the amended complaint, Basis Yield has not pleaded that, in purchasing the subordinated notes, it justifiably relied on the accuracy of the credit ratings of the higher tranches of the STACK offering—justifiable reliance being, of course, an essential element of a cause of action for fraud (see *ACA Fin. Guar. Corp. v Goldman, Sachs & Co.*, 25 NY3d 1043, 1044 [2015]; *Danann Realty Corp. v Harris*, 5 NY2d 317, 322 [1959]). Morgan Stanley contends that the amended complaint fails to plead justifiable reliance, as a matter of law, for three reasons. First, Morgan Stanley argues, the offering materials disclosed in no uncertain terms that the subordinated notes that Basis Yield purchased—which, again, had received no credit rating at all and thus were less than "junk"—were a highly speculative and risky investment. Second, Morgan Stanley points out that Basis Yield has not alleged that it conducted, or even sought to conduct, any due diligence investigation into the matters allegedly misrepresented, namely, the methodology through which the higher tranches of the STACK offering had been rated and the underwriting standards used in the issuance of the RMBS constituting most of the CDO's collateral portfolio. Third, Morgan Stanley contends that justifiable reliance is negated by the disclaimers of reliance that Basis Yield made upon purchasing the subordinated notes. We address each of these arguments below.

■ Turning first to the disclosure of the nature of the subordinated notes, it is certainly true that the STACK offering materials set forth, in no uncertain terms, that these unrated securities were highly speculative and risky, subject to large swings in value, and would bear all losses of the CDO until the purchaser's investment had been entirely wiped out. The premise of Basis Yield's claim, however, is not that it was led to believe that the subordinated notes were an objectively "safe" investment.[3] Rather, Basis Yield alleges that the ratings of the more senior tranches, and the relative thinness of the

standards under which the mortgage loans underlying the RMBS collateral were made.

3. Thus, Morgan Stanley misplaces reliance on our dismissal of the complaint in *HSH*. The *HSH* plaintiff alleged that it had relied on representations—contradicted by the disclosures of the offering circular and the

first-loss "equity" tranche represented by the subordinated notes, understated the overall risk of the entire CDO structure and, perforce, of the subordinated notes, as well. The warnings of the subordinated notes' risky nature, important though they were, did not give Morgan Stanley a license to misrepresent to the purchaser of the subordinated notes other material aspects of the CDO. Thus, it cannot be said that the risk disclosures in the offering materials negate the element of justifiable reliance.

As noted, Morgan Stanley next argues that the fraud claims are legally insufficient because Basis Yield does not allege that it conducted, or sought to conduct, a due diligence investigation into the allegedly misrepresented matters.[4] This argument relies on the well-established principle that a plaintiff suing for fraud (and particularly a sophisticated plaintiff, such as Basis Yield) must establish that it "has taken reasonable steps to protect itself against deception" (*DDJ Mgt., LLC v Rhone Group L.L.C.*, 15 NY3d 147, 154 [2010]; *see also Schumaker v Mather*, 133 NY 590, 596 [1892] [noting a party's obligation to make use of "the means available to (it) of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation," failing which the party "will not be heard to complain that (it) was induced to enter into the transaction by misrepresentations"]).

Typically, the principle that a party to a transaction must "take[ ] reasonable steps to protect itself against deception" (*DDJ Mgt.*, 15 NY3d at 154) requires a plaintiff claiming to have been fraudulently induced to purchase a business, or to lend to a business, to allege that, before entering into the transaction, it availed itself of the opportunity to verify the seller's or borrower's representations through an examination

operative contractual documents—that the notes in question were "low-risk investments consistent with [HSH's] conservative investment objectives" (95 AD3d at 199 n 10 [internal quotation marks omitted]).

4. Contrary to Basis Yield's contention, Morgan Stanley's failure to raise the due diligence issue in support of its motion in Supreme Court does not bar it from raising the issue on appeal. Whether the amended complaint pleads a necessary element of Basis Yield's claim is a pure issue of law appearing on the face of the record that may be considered for the first time on appeal "[because] the issue is determinative and the record on appeal is sufficient to permit our review" (*Vanship Holdings Ltd. v Energy Infrastructure Acquisition Corp.*, 65 AD3d 405, 408 [1st Dept 2009] [allowing a party to raise for the first time on appeal an argument concerning the interpretation of a written agreement]).

of the business's books and records (*see Rodas v Manitaras*, 159 AD2d 341, 342-343 [1st Dept 1990]; *see also Mosaic Caribe, Ltd. v AllSettled Group, Inc.*, 117 AD3d 421, 422 [1st Dept 2014]; *Graham Packaging Co., L.P. v Owens-Illinois, Inc.*, 67 AD3d 465 [1st Dept 2009]; *Jana L. v West 129th St. Realty Corp.*, 22 AD3d 274, 278 [1st Dept 2005]; *Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc.*, 16 AD3d 352 [1st Dept 2005]; *UST Private Equity Invs. Fund v Salomon Smith Barney*, 288 AD2d 87, 88-89 [1st Dept 2001]; *Lampert v Mahoney, Cohen & Co.*, 218 AD2d 580, 582-583 [1st Dept 1995]).[5] As Morgan Stanley would have it, the principle operates to bar the fraud claims in this case because Basis Yield fails to allege that it asked Morgan Stanley any questions, or that it asked to review any documents or files in Morgan Stanley's possession, relating either to (1) the underwriting standards that were used in originating the loans backing the RMBS in the STACK collateral portfolio or (2) the models the ratings agencies used in assigning credit ratings to the STACK notes senior to Basis Yield's subordinated notes. We disagree.

In this case, the matters allegedly misrepresented—the standards used in underwriting the loans underlying the RMBS collateral and the methodology used in rating the senior tranches of the STACK CDO—both ultimately relate to the reliability of the credit ratings of the STACK notes. In essence, Morgan Stanley takes the position that, as a matter of law, Basis Yield failed to "take[ ] reasonable steps to protect itself against deception" (*DDJ Mgt.*, 15 NY3d at 154) because it did not seek to look behind the credit ratings of the STACK notes (or the credit ratings of the underlying RMBS collateral) to verify that the securities actually deserved those ratings by examining the rating agencies' methodologies or the records of the underwriting of the RMBS in the collateral portfolio. This amounts to an argument that the purchaser of a credit instrument is not entitled to rely on the accuracy of the credit rating assigned to that instrument by an accredited rating agency but, rather, must check that rating against the records of the underwriter's due diligence and, further, must inquire into the methodology by which the rating was generated. It appears to

---

**5.** Alternatively, a buyer or lender may protect itself by obtaining a contractual warranty of the representation relied upon (*see DDJ Mgt.*, 15 NY3d at 154-156). The matters allegedly misrepresented in this case are not alleged to have been the subject of any contractual warranty.

be Morgan Stanley's view that, if the investor fails to investi gate such nonpublic information, it will have no claim against the underwriter or marketer of the instrument for having sold it with the undisclosed knowledge that the instrument's credit rating was based on an outdated methodology or on inaccurate information about the underlying assets.

If accepted, Morgan Stanley's position would require the prospective purchaser of a credit instrument to assume that the instrument's credit rating is fraudulent until the rating has been verified through a detailed retracing of the steps of the underwriter and credit rating agency. This would largely negate the utility of the credit ratings of negotiable bonds and notes that are published by accredited rating agencies. Morgan Stanley does not draw our attention to any New York decision holding that the due diligence obligation of even a sophisticated investor extends so far as to require it to seek to verify the accuracy of an accredited agency's credit rating of a note or bond through an investigation of nonpublic information. We decline to hold that, based on the facts alleged, Basis Yield was obligated as a matter of law to seek to investigate the basis for the credit ratings of the STACK notes or of the RMBS in the collateral portfolio. Consistent with our decision sustaining the fraud claims asserted by the purchaser of the highest tranche of the STACK offering (*China Dev. Indus. Bank v Morgan Stanley & Co. Inc.*, 86 AD3d 435 [1st Dept 2011]), we hold that Basis Yield's failure to allege that it sought to conduct such an investigation does not, at the pleading stage, negate the element of justifiable reliance for its fraud claims (*see King County, Washington v IKB Deutsche Industriebank AG*, 751 F Supp 2d 652, 661 [SD NY 2010] [complaint sufficiently pleaded, in support of common-law fraud claims governed by New York law, that "plaintiffs' reliance on credit ratings was reasonable despite liability disclaimers and due diligence requirements contained in the Information Memorandum"]; *Abu Dhabi Commercial Bank v Morgan Stanley & Co. Inc.*, 651 F Supp 2d 155, 181 [SD NY 2009] [plaintiffs adequately pleaded reasonable reliance on credit ratings in support of their common-law fraud claims governed by New York law in light of the reliance of "the market at large, including sophisticated investors, . . . on the accuracy of credit ratings and the independence of rating agencies because of their (federal regulatory) status and . . .

(their) access to non-public information"]; *see also id.* at 164-165 [describing role and accreditation of credit rating agencies, including Moody's and Standard & Poor's]).[6]

It bears emphasis that the amended complaint contains no allegations that, if true, would establish that the unreliability of the credit ratings on which Basis Yield relied, or the lax underwriting standards of the originators of the loans backing the RMBS in the CDO collateral, "could have been ascertained from reviewing market data or other publicly available information" (*HSH*, 95 AD3d at 195). This serves to distinguish *HSH*, in which a bank's fraud claim was based on the contention that the defendant knew that the credit ratings used to define the eligibility of securities for inclusion in a CDO reference pool were unreliable. We found that the sophisticated *HSH* plaintiff's allegations could not support the element of justifiable reliance, as a matter of law, because the allegations of the complaint itself, if true, established that

> "the potential for a discrepancy between a security's credit rating and its actual risk was understood in the relevant marketplace at the time. In other words, the unreliability of credit ratings was sufficiently well known that securities often traded at a discount to the price their credit rating (if accurate) would have warranted" (*id.* at 193).

▮ In contrast to the *HSH* complaint, the amended complaint in this case does not allege that Morgan Stanley's knowledge of the true risk profile of STACK notes "derived from publicly available market information" (*HSH*, 95 AD3d at 196). Rather, assuming the truth of Basis Yield's allegations and drawing all inferences in its favor (as we must upon a motion to dismiss), we hold that the complaint sufficiently pleads that the relevant matters were peculiarly, even if not exclusively, within Morgan

---

**6.** Our attention has not been drawn to any disclosure in the STACK offering materials, or any facts alleged in the amended complaint, that would have put Basis Yield on notice, as a matter of law, of the possible unreliability of the ratings of the specific securities in question, or of the lax underwriting practices of the originators of the loans backing the RMBS in the CDO collateral. Contrary to Morgan Stanley's argument, it cannot be said as a matter of law that such notice was provided by the disclosure in the offering memorandum that "[n]umerous class action lawsuits" had been filed alleging that unidentified mortgage lenders had violated consumer protection laws. Of course, in defending this action, Morgan Stanley may attempt to prove that Basis Yield, as a highly sophisticated financial entity, reasonably should have realized that the ratings in question were not reliable.

Stanley's knowledge.[7] Morgan Stanley is alleged to have known of the "toxic" nature of the mortgage loans underlying the CDO's RMBS collateral from the due diligence it conducted in underwriting those instruments. In addition, Morgan Stanley is alleged to have known of the credit rating agencies' use of outdated models to rate STACK's senior tranches because Morgan Stanley itself induced the agencies—surreptitiously—to use the outdated rating models. Nothing alleged in the amended complaint, and none of the disclosures in the offering materials referenced therein, would have given Basis Yield reason to suspect these problems—and, therefore, a jury could reasonably conclude that Basis Yield would have had no reason to ask the questions concerning underwriting standards and ratings models that Morgan Stanley now argues that Basis Yield should have asked when considering this investment.[8]

Finally, Basis Yield's contractual disclaimers of reliance on Morgan Stanley do not negate justifiable reliance as a matter of law, given the particular allegations of the amended complaint. Specifically, Basis Yield alleges that Morgan Stanley—through its role as underwriter of the RMBS used as collateral for the CDO and through its allegedly secret manipulation of the rating of the CDO's more senior tranches—had peculiar knowledge of the allegedly misrepresented or concealed matters. Taking the allegations of the amended complaint as true, and drawing all inferences in favor of the pleader, we hold that the complaint sufficiently pleads that Basis Yield had no reason to inquire into these matters, and could not readily have investigated them independently, as more fully discussed in connection with the due diligence issue. The disclaimers of reliance therefore do not bar this action at the pleading stage (*see China Dev. Indus. Bank*, 86 AD3d at 436).

---

7. "[T]he peculiar knowledge exception applies 'not only where the facts allegedly misrepresented literally were within the exclusive knowledge of the defendant, but also where the truth theoretically might have been discovered, though only with extraordinary effort or great difficulty' " (*Harbinger Capital Partners Master Fund I, Ltd. v Wachovia Capital Mkts., LLC*, 27 Misc 3d 1236[A], 2010 NY Slip Op 51046[U], *9 [Sup Ct, NY County May 10, 2010, Kapnick, J.], *appeals withdrawn* 90 AD3d 544 [1st Dept 2011], quoting *DIMON Inc. v Folium, Inc.*, 48 F Supp 2d 359, 368 [SD NY 1999]).

8. Again, in defending this action, Morgan Stanley, if it has supporting evidence, may seek to prove that information generally known to financial professionals at the time of the offering (July 2006) should have alerted Basis Yield to the possible existence of the allegedly misrepresented or concealed weaknesses of the offering.

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered March 11, 2013, which, to the extent appealed from, denied the motion by defendants Morgan Stanley, Morgan Stanley & Co. LLC formerly known as Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International PLC formerly known as Morgan Stanley & Co. International Limited to dismiss the fraud and fraudulent concealment causes of action as against them, should be affirmed, with costs.

GONZALEZ, P.J., MOSKOWITZ and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered March 11, 2013, affirmed, with costs.