■ IKB INTERNATIONAL S.A., in Liquidation, et al., Respondents, v MORGAN STANLEY et al., Appellants. [36 NYS3d 452]—

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered October 29, 2014, which, insofar as appealed from, denied defendants' motion to dismiss the causes of action for fraud and aiding and abetting fraud except as related to the four certificates purchased before November 16, 2005, and, as related to all other certificates, except to the extent they are based on alleged misrepresentations regarding transfer of notes and mortgages to the trusts, unanimously affirmed, without costs.

This fraud action arises out of the significant financial losses plaintiffs incurred as a result of defendants' allegedly fraudulent conduct in connection with the offer, sale, structure, and marketing of $132,665,000 in residential mortgage backed securities (RMBS). Primarily, this appeal concerns whether plaintiffs adequately pleaded the elements of justifiable reliance and scienter necessary for fraud claims, both as to the RMBS that defendants sold directly to them and as to four RMBS for which defendants only acted as the underwriter. We hold, as more fully explained below, that plaintiffs adequately pleaded these elements by alleging that defendants knew that the offering documents misrepresented critical characteristics of the underlying mortgage loans, that they fraudulently concealed the inferior quality of those loans by means of misstatements, misrepresentations, and omissions of material fact in the offering documents, and that plaintiffs undertook appropriate due diligence before purchasing the RMBS. The fraud claims concerning defendants' role as an underwriter are also sufficiently pleaded, based upon plaintiffs' allegations that defendants participated in or had knowledge of the fraud.

Plaintiff IKB International S.A. (IKB SA), a Luxembourg incorporated financial institution, is a subsidiary of plaintiff

IKB Deutsche Industriebank AG (IKB AG), a German corporation. Between June 2005 and April 2007, IKB SA purchased a total of 25 RMBS certificates in connection with 18 securitizations that defendants sponsored, arranged, marketed, underwrote, and/or sold. In 2008, IKB SA sold all 25 RMBS at a massive financial loss. Two of the RMBS were sold to a nonparty buyer and the other 23 RMBS were sold to IKB AG. In November 2008, IKB AG sold the 23 RMBS it was holding to Rio Debt Holdings (Ireland) Limited (Rio). In December 2008, both IKB SA and IKB AG assigned all of their claims arising from the purchase of the RMBS, including claims against the issuers, underwriters, and sellers of the securities, to Rio. In November 2011, plaintiffs, defendants, and Rio entered into a tolling and forbearance agreement concerning claims related to the RMBS (the statute of limitations was due to expire on May 15, 2012). On May 9, 2012, Rio reassigned all claims arising from the RMBS to IKB AG, but did not physically deliver the securities themselves. This action was commenced on November 16, 2012 and a complaint was filed May 17, 2013. This series of events forms the backbone of defendants' additional arguments, that this action violates the champerty statute because plaintiffs purchased the claims for the sole purpose of bringing an action (Judiciary Law § 489), plaintiffs lack standing, and in any event, it is time barred. We agree with the motion court that defendants failed to show, as a matter of law, that the reassignment of claims from Rio to IKB SA violated the champerty statute. The defendants also failed to show, as a matter of law, that the claims are subject to the three-year German statute of limitations, as opposed to the 30-year Luxembourg statute of limitations.

To establish a prima facie claim of fraud, a complaint must allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance, and resulting injury (*Dembeck v 220 Cent. Park S., LLC*, 33 AD3d 491, 492 [1st Dept 2006]). Defendants argue that plaintiffs are sophisticated investors and have not adequately alleged the justifiable reliance element of their claims, because they made a substantial investment without conducting any due diligence of their own to independently appraise the risks attendant to the RMBS in which they invested.

Where a plaintiff is a sophisticated entity, "if the facts represented are not matters peculiarly within the [defendant's] knowledge, and the [plaintiff] has the means available to [it] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, [the

plaintiff] must make use of those means, or [it] will not be heard to complain that [it] was induced to enter into the transaction by misrepresentations" (*ACA Fin. Guar. Corp. v Goldman, Sachs & Co.*, 25 NY3d 1043, 1044 [2015] [internal quotation marks omitted]; *MP Cool Invs. Ltd. v Forkosh*, 141 AD3d 111, 117 [1st Dept 2016]). In other words, a sophisticated investor claiming that it has been defrauded has to allege that it took reasonable steps to protect itself against deception by, for instance, examining available financial information to ascertain the true nature of a particular transaction or facts averred (*see e.g. DDJ Mgt., LLC v Rhone Group L.L.C.*, 15 NY3d 147, 154-155 [2010]).

Plaintiffs allege that defendants knowingly misrepresented the credit quality and characteristics of the pool of residential mortgage loans that comprised the securitizations. For instance, defendants represented that rigorous loan underwriting standards had been employed in the loan origination process, and that if a particular loan did not comply, there were other compensating factors, when in fact the originators had systematically abandoned their underwriting standards, selling loans that they knew were defective. There were also misrepresentations about loan to value ratios, the appraised values of the underlying loans, owner occupancy of the mortgaged properties, and credit ratings.

Specifically on the issue of justifiable reliance, the complaint alleges that plaintiffs' investment advisors analyzed the RMBS based upon information in the prospectuses, prospective supplements and other offering documents and that plaintiffs lacked access to the underlying mortgage loan files. They further claim that they would not have received the loan files even if they had been requested because of applicable regulations protecting the borrowers' personal information (*see* 17 CFR 248.1 [SEC Privacy of Consumer Financial Information]). Plaintiffs further allege that defendants cautioned investors to rely only on the offering documents and expressly warned that anyone offering conflicting information about the investment was unauthorized to do so. These allegations are sufficient to allege justifiable reliance under the circumstances of this case.

Defendants argue that in order to establish justifiable reliance, plaintiffs were required to allege that they sought additional information from defendants about the truthfulness of the representations made in the offering documents or that they requested the loan files for the loans underlying the RMBS. The level of due diligence advocated by defendants requires a prospective purchaser to assume that the credit rat-

ings assigned to the securities were fraudulent and to verify them through a detailed retracing of the steps undertaken by the underwriter and credit rating agency. We do not require this heightened due diligence standard to support justifiable reliance in a pleading concerning such sales of securities by prospectus (*see Basis Yield Alpha Fund Master v Morgan Stanley*, 136 AD3d 136, 142-143, 144 [1st Dept 2015]; *CIFG Assur. N. Am., Inc. v Goldman, Sachs & Co.*, 106 AD3d 437 [1st Dept 2013]).

Defendants also argue that the motion court erred in failing to dismiss plaintiffs' fraud claims because the element of scienter is only based on generalized allegations that defendants knew of the falsity of their representations. "The element of scienter, that is, the requirement that the defendant knew of the falsity of the representation being made to the plaintiff, is, of course, the element most likely to be within the sole knowledge of the defendant and least amenable to direct proof" (*Houbigant, Inc. v Deloitte & Touche*, 303 AD2d 92, 98 [1st Dept 2003]). All that is required to defeat a motion to dismiss a fraud claim for lack of scienter is "a rational inference of actual knowledge" (*see AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC*, 108 AD3d 444, 446 [1st Dept 2013]). The allegations that defendants were informed about defects in the loans they were securitizing because they obtained this information through their own due diligence are sufficient to plead scienter (*see e.g. Basis Yield Alpha Fund Master*, 136 AD3d at 145). The due diligence reports prepared during the securitization process suggest that almost 39% of the loan files reviewed for defendants were defective; yet defendants included 56% of the nonconforming loans in its RMBS, often making deals that allowed them to obtain the loans at steep discounts. The complaint also alleges that defendants were uniquely positioned to know that the originators had abandoned their underwriting guidelines. These allegations satisfy the element of scienter for pleading purposes. Defendants' argument, that they also suffered financial losses and that it defies logic that they would have invested as heavily as they did (almost $543 million) in securities expected to fail, does not render the pleading legally infirm.

Defendants separately urge the dismissal of the fraud claims concerning the ACCR 2004-3, ACCR 2006-1, NCHET 2005-C, and NCHET 2005-D securitizations. They argue that they acted exclusively as underwriter with respect to these securitizations, whose issuers are not parties to this action, and that the allegations in the complaint do not support a claim that they

made any of the material misrepresentations in the offering materials for these securitizations (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 46 AD3d 400 [1st Dept 2007], *affd* 12 NY3d 553 [2009]). Although an underwriter does not usually "make" statements in offering documents, it constructively represents that statements made in an offering document are complete and accurate (*see e.g. In re MTC Elec. Tech. Shareholder Litig.*, 993 F Supp 160, 162 [ED NY 1997]). The complaint in this case alleges that defendants' role as an underwriter was significant, active and not passive, because among other responsibilities it purchased bonds, identified potential investors, and provided them with the offering documents in order to solicit their investment. Moreover, as underwriter, defendants were privy to and had actual knowledge of the issuers' fraud, given their active involvement in the entire securitization process. Defendants worked closely with the sponsor, rating agencies, and originators in structuring the transaction. Two of the prospectus supplements disclosed a lending relationship between defendants as underwriter and the depositor. Defendants' name was on the offering documents, and for at least one of the securitizations defendants were identified as the "lead manager." These alleged facts permit a reasonable inference that defendants, in their underwriter role, had a significant presence in many aspects of the securitization process and that they not only knew of the substandard quality of the loans being securitized, they actively participated in it (*see Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486 [2008]). Unassailable proof of these facts is not necessary at the pleading stage to withstand a dismissal motion (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553 [2009]). Concur—Sweeny, J.P., Saxe, Moskowitz, Gische and Webber, JJ.